IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN ALEXANDER WAGNER, # 371-133 | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. ELH-14-791 |
| WARDEN, et al | * | |
| Defendants. | * | |

## MEMORANDUM

John Alexander Wagner, an inmate at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, submitted correspondence to the court claiming, *inter alia*, that his life is in imminent danger. (ECF 1 and ECF 1-1). The court construed the correspondence and Wagner's accompanying declaration[1] as a complaint for emergency injunctive relief[2] and directed the Maryland Attorney General to file an expedited response solely as to the allegations of imminent danger.[3] *See* ECF 2. Pursuant to this court's Order, the Maryland Attorney General has filed an expedited response to Wagner's request for emergency injunctive relief. *See* ECF 6.

### FACTUAL BACKGROUND

Wagner alleges that on December 13, 2013, he was assaulted while handcuffed. As a result, Wagner was afraid to "cuff up" and decided instead not to leave his cell. (ECF 1-1 at 1).

---

[1] The declaration, ECF 1-1, is missing page three.

[2] Wagner later submitted a filing titled "Motion for Order to Show Cause for a Preliminary Order (ECF 5). For reasons expressed, *infra,* it will be denied.

[3] The Court also indicated that, as to Wagner's claim that correctional officers used excessive force against him and his claim of unlawful disciplinary segregation, Wagner was to submit a prisoner civil rights complaint under 42 U.S.C. § 1983, using a form and instructions that the Clerk provided to Wagner.

He refused to "cuff up" from December 13, 2013 to December 31, 2013. *Id*. On December 30, 2013, Sergeant Caple told him "get ready than [sic] we coming." *Id*. Wagner states that he "had words" with corrections officer Shawn "Romesburn,"[4] who allegedly said "'your little black ass really wanna die in that little box.'" *Id*. at 1-2. Wagner asserts that he placed a sign in his cell window and "prepared myself as he'd warned… I know not what C.O. Romesburn said to incite an extraction team, nonetheless, an extraction team was assembled…." *Id*. at 2.

According to Wagner, he suffered an asthma attack when the extraction team shot him with pepper balls and administered pepper spray. He was temporarily blinded and bled profusely. He states his cell door was then shut and he was left there for 12-15 minutes, gagging, bleeding, and blinded, before he was handcuffed. On December 31, 2013, or January 1, 2014, Wagner was photographed and then taken to the Western Correctional Institution for observation. Officers subsequently punched and kicked him, thereby injuring his foot. *Id*. at 4. Wagner also alleges that corrections staff members gave an unnamed member of a white supremacist group razors with which to harm Wagner. *Id*. at 7-8.

In response, counsel for the Maryland Attorney General has submitted the declaration of NBCI Correctional Case Manager John White, along with extensive prison records, to dispute Wagner's allegations of imminent danger. (ECF 6-1 at 1). White attests that, to the best of his knowledge and on his review of prison records, Wagner has not been injured nor have staff members solicited anyone to harm him. (White Decl. at ¶ 7).

The "Serious Incident Report" regarding the cell extraction, an exhibit to White's Declaration, states that CO Romesburg, upon checking on plaintiff's cell, observed a sign in the window that read, "I'm at peace with Lord, ready to die are you?" (ECF 6-1 at 5). Romesburg

---

[4] According to ECF 6, the correct name is "Romesburg."

gave several orders to Wagner to come to the cell door and remove the covering from the window so that his well being could be verified. Wagner did not comply. An extraction team was assembled to check on Wagner. Upon entry into the cell, the team found Wagner with his arms wrapped from his wrists to his elbows with towels and a pillow tied to his chest. Wagner threw the contents of a milk carton filled with a liquid substance that smelled strongly of feces, striking Officers Preston and Crites on their faces and bodies. *Id*. The liquid also struck Sgt. Gordon, Officer Romesburg, and Officer Ritchie in the arms and torso. Six rounds from a pepper ball launcher were then fired, but they proved ineffective due to Wagner's makeshift body armor. Wagner moved to the toilet in an attempt to fill another container. *Id*. In order to avoid further assault, a burst of pepper spray was administered to Wagner. After further refusal to comply, Wagner agreed to be handcuffed and was escorted to the Housing Unit #1 Medical Room. *Id*.

Wagner was treated for pepper spray exposure and bleeding from a "busted lip" caused by the pepper ball launcher. (Serious Incident Report, ECF 6-1 at 5; Medical Report, December 31, 2013, ECF 6-1 at 10). The injury is described in the medical report as a "superficial injury to lower lip." ECF 6-1 at 10. Wagner refused to sign a written statement of the incident. He stated: "I'm at peace with the Lord. I'm ready to die." ECF 6-1 at 5. Wagner also refused a decontamination shower and was placed on suicide precautions. The Internal Investigation Unit ("IIU") was notified of the incident. However, an IIU case number has not been assigned. *Id*. But, a "video record of the incident was captured…." *Id*.

On January 1, 2014, Wagner was found lying in his cell with his face in a small amount of blood and had difficulty keeping his eyes open. (ECF 6-1 at 5; Medical Report, December 31, 2013, ECF 6-1 at 12, 14). The medical report reads: "No source can be determined for blood

found in cell." (ECF 6-1 at 12). Wagner was transferred to the infirmary and for suicide observation. (ECF 6-1 at 5; Medical Report, December 31, 2013, ECF 6-1 at 14).

Prison logs show Wagner is receiving or was offered medical, dental and mental health treatment, showers, and out-of-cell activity since the incident. He remains in segregation confinement.

### DISCUSSION

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). For injunctive relief to be granted, the claimant must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 19 (2008). All four requirements must be satisfied. *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). A plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Wagner fails to satisfy the standard for preliminary injunctive relief. His claims of verbal threats and epithets from prison staff, if true, would certainly constitute unprofessional and troubling conduct. But, even if true, such allegations do not substantiate a claim of likely and irreparable harm. Further, Wagner provides no details to substantiate his allegation that a white

supremacist has been ordered to harm him. For example, Wagner has not identified the white supremacist nor indicated who ordered the attack or supplied the razors. In short, plaintiff fails to establish the likelihood of suffering imminent, irreparable harm absent the award of preliminary injunctive relief. Further, the court is mindful that functions of prison management, such as security, must be left to the broad discretion of prison administrators to enable safe and effective management. *See*, *e.g., Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir.1991); *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980).

The court will grant Wagner twenty-eight days to state whether he wishes to pursue his remaining claims. Wagner will be sent another prisoner instructions and complaint packet to assist him in the event he intends to pursue his remaining claims.

## CONCLUSION

For the foregoing reasons, injunctive relief will be denied. Wagner will be granted twenty-eight days from the docketing of the accompanying Order to advise the court whether he wants to pursue his remaining claims and/or amend his complaint. Alternatively, he may withdraw his case from further review. A separate Order follows.

May 9, 2014                                                              /s/
Date                                                                        Ellen Lipton Hollander
                                                                                United States District Judge