**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JOHN ALEXANDER WAGNER, # 371-133    *

                                          *

Plaintiff,                               *

                                          *

v                                         *         Civil Action No. ELH-14-791

                                          *

WARDEN, et al.,                          *

                                          *

Defendants.                         *

                                          ***

### MEMORANDUM OPINION

John Alexander Wagner, a self-represented inmate at North Branch Correctional Institution ("NBCI"), initiated suit against approximately 50 defendants, pursuant to 42 U.S.C. § 1983, alleging many claims. *See* ECF 1, as supplemented by ECF 15; ECF 16; ECF 17.[1] The defendants previously filed dispositive motions (*see* ECF 44; ECF 75), which I addressed in my Memorandum Opinion (ECF 82) and Order (ECF 83) of March 19, 2015. In that Memorandum Opinion, I divided the defendants into two categories: Medical Defendants and State Defendants. *See* ECF 82 at 2 (setting forth the names of the defendants and their categories). In my ruling, I granted in part and denied in part the Medical Defendants' motion to dismiss, and granted in part and denied in part the State Defendants' motion for summary judgment.[2]

---

[1] For reasons that I explained previously (ECF 82 at 1 n.1), it is difficult to state precisely the number of people who were sued by Wagner in this case.

[2] Plaintiff noted an appeal from my ruling to the Fourth Circuit. *See* ECF 86; ECF 91. The appeal was dismissed as premature. ECF 100; ECF 101.

In particular, as to Wexford Health Sources, Inc. ("Wexford"); Colin Ottey, M.D.; Kristi Cortez, RN; and Nurse Autumn Durst[3] (collectively, the "Medical Defendants"), I denied the Medical Defendants' motion, without prejudice to their right to renew the motion. But, I granted the motion to dismiss as to Medical Defendants Tiffany Bennett, Janice Gilmore, and William Beeman. ECF 83. In regard to the excessive force claims against the State Defendants, I granted summary judgment in favor of the State Defendants as to Wagner's claims arising from incidents on October 31, 2013, and December 31, 2013. ECF 82 at 59-62. But, I denied summary judgment, without prejudice, as to claims arising from incidents on December 13, 2013, and January 1, 2014. *Id.* As to Wagner's claim that Sgt. Justin Gordon interfered with Wagner's medical treatment by directing the falsification of Wagner's medical records after a cell extraction on December 31, 2013, I denied summary judgment, subject to the right to renew. ECF 83. And, I denied summary judgment, subject to the right to renew, as to Wagner's claim that Officer Eagleson solicited an inmate to harm Wagner. *Id.*

Several motions are now pending. The remaining Medical Defendants filed a Motion for Summary Judgment ("Medical Motion," ECF 105), supported by a Memorandum of Law. ECF 105-3. The remaining State Defendants filed a Supplemental Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment ("State Motion," ECF 118), which I shall construe as a motion for summary judgment. Both motions are supported by numerous exhibits.[4]

---

[3]   Autumn Durst Painter, Certified Nurse Practitioner, states in her Affidavit of August 27, 2015, that she was formerly known as Autumn Durst. ECF 105-6. I will continue to refer to her by the name of Durst.

[4]   The State Defendants did not file a legal memorandum in support of the renewed motion, nor did they reference the memorandum filed in support of their first dispositive motion. *See* ECF 75-1. But, I will treat the State Defendants' pending motion (ECF 118) as a renewed summary judgment motion that incorporates the memorandum of law at ECF 75-1.

Wagner filed an opposition to the motions (ECF 132),[5] supported by many exhibits, including two personal declarations (ECF 132-2; ECF 132-3) as well as exhibits that have been filed in paper form, and thus do not appear on the electronic docketing system.  *See* ECF 132-4 (notation).   In addition, Wagner filed a cross-motion for partial summary judgment ("Wagner Motion," ECF 134).   The Wagner Motion indicates that it pertains to the excessive force claims against the State Defendants. *Id.*   The Medical Defendants filed an opposition to the Wagner Motion (ECF 136), to which Wagner replied.   *See* ECF 137, "Reply."   In his Reply, Wagner asserts that he also moved for partial summary judgment as to defendant Kristi Cortez, ECF 137 at 1.   As to Cortez, plaintiff complains, *inter alia*, that she failed to provide him with a decontamination shower on December 31, 2013. In response, Cortez filed a motion for leave to file a surreply (ECF 138), which shall be granted.  The surreply appears at ECF 138-1.

No hearing is necessary to resolve these motions.  Local Rule 105.6.  In resolving the motions, I shall incorporate by reference the facts set forth in detail in my prior Memorandum Opinion (ECF 82), and repeat them here only as necessary to provide context to the pending motions.

For the reasons set forth below, I shall grant the motion of the Medical Defendants, except as to the issue of the decontamination shower on December 31, 2013.  I also shall grant the motion of the State Defendants, except as to the issue of the decontamination shower on December 31, 2013. And, I shall deny the Wagner Motion, except as to the issue of the decontamination shower on December 31, 2013, which is premature and shall therefore be held in abeyance pending further briefing.

---

[5] Pursuant to *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975), Wagner was notified that he was entitled to file oppositions with supporting materials.  ECF 107; ECF 119.

## I.    THE MEDICAL DEFENDANTS

Wagner has asserted numerous claims against the remaining Medical Defendants.   In sum, the claims appear to be as follows: 1) Nurses Cortez and Durst failed to stop at his cell during cell checks, despite his requests for medical assistance. ECF 15 at 9; ECF 17 at 6; ECF 132-2 at 3; 2) the nurses failed to inspect or treat a "knot" on his forehead, ECF 17 at 6; ECF 132-1; 3) Cortez, at the direction of Gordon, did not accurately document Wagner's injuries on December 31, 2013; ECF 16 at 6, 11; 4) Nurse Cortez denied him a decontamination shower on December 31, 2013; ECF 137 at 2; 5) Wagner received no medical attention after incidents on October 31, 2013, and November 6, 2013, when his vital signs were taken, and he did not receive a more complete medical evaluation until November 8, 2013, when he was sent for x-rays; ECF 15 at 6; ECF 17 at 4; 6) numerous sick call slips were not answered, ECF 15 at 9; ECF 17 at 6-7; 7) he sustained painful injuries to his teeth, finger, shoulder, eye, and toe, without adequate medical care, ECF 1-1 at 7; ECF 13 at 11; ECF 15 at 9; ECF 17 at 5; and ECF 29 at 3,5; and 8) he is unable to stand properly and cannot bend or lift his legs. ECF 29 at 5.

In addition, Wagner claims the Medical Defendants denied treatment and/or provided inadequate medical care for injuries he sustained during various incidents with correctional officers. ECF 16-4 at 5. Those incidents occurred on October 31, 2013, December 13, 2013, December 31, 2013, and January 1, 2014.[6]

---

[6]  Wagner also states an eye doctor told him that eyeglasses would improve his vision, but that he did not receive glasses. ECF 17 at 6.  However, Wagner's medical records show he received eyeglasses on January 31, 2015.  ECF 105-4, Wexford Ex. A at 0197.

## A.  The Medical Defendants' Motion For Summary Judgment

Defendants Cortez, Durst, Ottey, and Wexford have moved for summary judgment and submitted as Exhibit A verified copies of more than 400 pages of Wagner's medical records.[7] The Medical Defendants contend that the records demonstrate that Wagner has received substantial medical treatment for his complaints of injury and dispel his claims of deliberate indifference to his medical needs.  *See* ECF 105-2 (Statement of Material Facts not in Genuine Dispute); ECF 105-3 at 5.  They have also submitted affidavits executed by nurses Cortez and Durst.  ECF 105-5; ECF 105-6.

Wagner opposes the Medical Motion, and disputes much of the information contained in his medical records.  He has filed, *inter alia*, his own declarations in opposition to defendants' summary judgment motion (ECF 132-2; ECF 132-3), as well as a "Statement of Disputed Material Facts."  ECF 132-4.

According to Wagner, the affidavits of Cortez and Durst are "inaccurate and false."  ECF 132-3 at 2, ¶ 11.  He asserts, among other things, that on several occasions Dr. Ottey "ignored" his medical concerns (ECF 132-3 at 2, ¶ 6) and he was denied medical treatment by Dr. Ottey and several others.  *Id*. ¶¶ 6, 7, 8.  He also avers that his "complete [medical] records" have been disposed of or ignored . . . ."  ECF 132-2 at 1, ¶ 4.  Further, Wagner maintains that health care providers "equate taking [a] prisoner's vital signs and weight to having treated their complaints thus documenting it as such."  ECF 132-2 at 6, ¶ 29.

---

[7]  The medical records are filed separately and are not accessible by CM/ECF.  *See* ECF 105-4.  In citing to them, I shall refer to the Bates stamp number that appears on the particular page.  The State Defendants also submitted verified copies of Wagner's medical records to support their first dispositive motion (ECF 75), and portions of the medical records were summarized in my earlier Memorandum Opinion.  *See* ECF 82 at 48-49.

In addition, Wagner asserts: "Defendants have constantly lied and falsely documented me as having received medical attention or refusing medical attention[.]   I have never denied or refused my much needed treatment . . . .   At no time has my signature been obtained for a ROR [release of responsibility form] which is the proper procedure along with medical staff personally confirming that the prisoner actually refused."   ECF 132-2 at 3, ¶ 13. [8]   Wagner also attests that he "never refused bloodwork or any other medical treatment . . . ."   ECF 132-3 at 1, ¶ 5.   In addition, he claims that Dr. Ottey "ignored and refused" to treat Wagner on his "scheduled day[.]"   *Id.* at 2 ¶ 6.

Moreover, Wagner claims that on December 13, 2013, he was dizzy and had a bad headache. He asserts that Nurse Cortez and other unnamed nurses were informed about and shown Wagner's injuries, but he received no treatment.   ECF 132-2 at 4.   Wagner also states that on December 31, 2013, he asked for treatment due to burning from use of pepper spray (ECF 132-2 at 1), which contradicts the statement on his medical record that he presented no other medical concerns.   Wagner notes he received no treatment for burning or bleeding on that visit. *Id.*

In one of Wagner's declarations (ECF 132-2), in opposition to the Medical Motion, Wagner asserted that, after the use-of-force incident on December 31, 2013, he was denied a decontamination shower.   *Id.* at 1, ¶ 5.   He asserts, "Despite Defendants [sic] claim I didn't have

---

[8]   In Wagner's Declaration, which is dated November 9, 2015 (ECF 132-3 at 1), Wagner introduces claims that he has not seen a medical provider since September 4, 2015; he was provided inadequate care during the time he was on a hunger strike; and there is blood and food all over his cell.   ECF 132-3.   These issues are not presented in this Complaint.   He also discusses medical concerns involving blood in his stool, gastritis, psoriatic disease, and fears of cancer.   Additionally, he alleges he was subjected to excessive use of force on September 24, 2014. *Id.* These new allegations will not be considered here.   Of course, Wagner may pursue his claims by timely filing a separate action. Indeed, on January 7, 2016, Wagner filed a complaint alleging he was subjected to excessive use of force on September 24, 2014.   *Wagner v. Iames, et al.*, Civil Action ELH-16-98.

any medical concerns, I specifically asked for treatment that I was burning but Defendant denied me as she clearly conspired with custody and did not document my actual medical needs/concerns."[9]  Wagner further complains that he "did not receive a decontamination shower" in the "strip cell."  *Id.* ¶ 6.  He cites Division of Correction Directive (DCD) 110-23, which states that "medical treatment shall be given to all persons exposed to chemical agents.  ECF 134-1 Attachments, Exhibit 9.[10]

Further, Wagner claims that he received no treatment on January 1, 2014, after an alleged assault that day involving mace in his face and repeated physical attacks.  ECF 132-2 ¶ 7.  He acknowledges that he was placed on suicide watch, but claims he received no medical care, despite the fact that he was bloody and his eyes were burning.  *Id.* ¶ 8.

## B.  Wagner's Motion for Partial Summary Judgment

In the Wagner Motion (ECF 134-1), Wagner largely reiterates his allegations of use of excessive force and inadequate medical care, and denial of medical care.  He has also filed another Declaration (ECF 134-2) as well as those of other inmates.  In the inmate declarations, Wagner is sometimes called "Yahya."

In his Statement of Undisputed Facts (ECF 134-3), Wagner claims he asked for a "quick shower because he was burning and could not breath[e]."  *Id.* at 2-3 ¶ 22.  Wagner also states: "Defendant refused Plaintiff a decontamination shower and prevented Cortez from treating him."

---

[9]   As noted in my Memorandum Opinion of March 19, 2015 (ECF 82), the Serious Incident Report filed on December 31, 2013, indicates that Wagner was offered a decontamination shower, which he refused.  ECF 6-1 at 5; *see also* ECF 75, Ex. 1 at 252.  This information contrasts with Wagner's statement to the Internal Investigation Unit that he requested, but was denied, a decontamination shower.  ECF 75, Ex. 1 at 213.

[10]   This exhibit is separately filed and not accessible on the electronic docket.

*Id.* at 3, ¶ 23.[11] Further, Wagner claims that "defendant refused" him "a decontamination shower" and the strip cell had no working sink or toilet. *Id.* ¶ 24.  And, he claims the policy of the Department of Public Safety and Correctional Services ("DPSCS") requires a shower for an inmate exposed to such chemicals. *Id.* ¶ 25.  It bears noting that the DPSCS Use of Force Manual and DCD 110-23 state only that medical treatment must be provided after exposure to chemical agents after a use of force incident. ECF 134-3, Ex. 8 at 18-19, 21; Ex 9 at 8.[12] However, contrary to Wagner's suggestion, the directives do not specifically prescribe a shower. *Id.*

In Wagner's Reply (ECF 137), Wagner clarifies that he is seeking summary judgment in regard to his claims concerning the medical care he should have received after his cell extraction on December 31, 2013.  ECF 137 at 1.  Specifically, Wagner claims the State Defendants and Defendant Cortez "maliciously refused" to provide him with a decontamination shower to flush his eyes after he was exposed to pepper spray and otherwise denied him medical treatment. *Id.* at 1-2.[13]  He disputes Cortez's notation on his medical record that he denied medical complaints, and suggests Cortez conspired with correctional officers by so noting. *Id.* at 1-2, 4.  Wagner posits that the failure to provide him with a shower constitutes deliberate indifference sufficient

---

[11] Plaintiff does not identify the particular defendant by name.  Because several defendants are mentioned in the Declaration, I cannot determine the particular defendant to whom plaintiff was referring.

[12] These exhibits are separately filed and cannot be accessed on the electronic docket.

[13] Wagner does not particularize what medical care he believes he should have been provided.  ECF 137.

to demonstrate constitutionally inadequate medical care, and that he is entitled to summary judgment in his favor as to this claim. *Id.* at 1, 2.[14]

## C.  THE EVIDENCE

### 1.  Wagner's Medical Records

After the alleged use-of-force incident of October 31, 2013, the first sick call slip in Wagner's medical record is dated November 2, 2013.  ECF 105-2 at 1, ¶ 2; Wexford Ex. A at 0257, 0258.  Wagner complained about a "swollen head, internal bleeding, fractured ribs, broken thumb and cuts on hand from being assaulted 10/30/13 [sic]."  *Id.*  It is described as "emergency request." *Id.*  The sick call slip is stamped received on November 4, 2013. *Id.* [15]

Wagner submitted another sick call slip dated November 3, 2013, complaining about a "broken thumb" and "head swollen from use of force."  Wexford Ex. A at 0258.  This sick call slip is stamped as received on November 4, 2013.  *Id.*

On November 4, 2013, Wagner filed a sick call slip complaining of spitting up blood due to an assault by officers, as well as broken ribs, cracked teeth, and a broken thumb.  Wexford Ex. A at 0256.  Wagner wrote on the sick call request that this was his "4th Slip." *Id.*

Two days later, on November 6, 2013, Cortez examined Wagner for complaints that he was injured during a use-of-force occurrence on October 31, 2013.  ECF 105-4, Wexford Ex. A at 0016.  Wagner reported discomfort in his ribs that was subsiding, cracked teeth, a broken thumb, and vomiting of blood, the latter having ceased the previous morning. Cortez observed

---

[14] Wagner also clarifies that he is not raising a claim of medical negligence.  ECF 137 at 3.

[15] Wagner asserts that sick call slips were submitted on his behalf by fellow inmates Ronnie Wimbush and Tavone Singletary on October 31, 2013, November 1, 2013, and November 2, 201**2**.  ECF 132-4 (attachments), at 1 ¶ 2.  I shall assume the date of November 2, 201**2** reflects an inadvertent error and is meant to state November 2, 201**3**.

that Wagner was alert and oriented, with three "superficial scratches" behind his right ear, a steady gait, and no cracked teeth. *Id.* Moreover, he alighted from the examination table "without difficulty." *Id.* Wagner was prescribed 100 mg. of Motrin to take up to three times daily, as needed. *Id.*

The same day, November 6, 2013, Dr. Ottey ordered x-rays of Wagner's right hand and fingers. Wexford Ex. A at 0015. The x-rays showed no evidence of an acute fracture, dislocation, or subluxation. *Id.* Wagner was diagnosed with sprains and strains to his wrist and hand. *Id.*

On November 7, 2013, Ava Joubert, M.D., ordered x-rays of Wagner's ribs and chest. Wexford Ex. A at 0018. The x-rays showed that Wagner's lungs were clear and there was no evidence of an acute fracture, dislocation, or subluxation. *Id.*

Nurse Cortez again examined Wagner for his injuries on November 11, 2013. Wexford Ex. A at 0019. She noted that Wagner's "discomfort" was "improving." *Id.* Dr. Ottey again examined Wagner on November 16, 2013, for ongoing complaints of injury, including pain in his right wrist, left shoulder, and ribs. Wexford Ex. A at 0023. Dr. Ottey noted that Wagner's x-rays of his wrist, ribs, and thumb were "normal." *Id.* at 0023. He also noted that Wagner's wrist was "tender with movement" and his right thumb was "tender to touch." *Id.* In addition, he noted moderate pain and tenderness of the shoulders. *Id.* Dr. Ottey prescribed pain medication and muscle rub. *Id.* at 0018. Wagner also received an ace bandage. *Id.* at 0025.

On December 1, 2013, Dawn Hawk, RN, examined Wagner for complaints of vomiting blood. Wexford, Ex. A at 0026. No distress was noted.

Cortez examined Wagner on December 10, 2013, for complaints of dry skin and pain in his right wrist/thumb, left shoulder, and ribs. Wexford Ex. A at 0028. Wagner claimed the date

of onset was 10/31/13.  *Id.*  He also reported that his vomiting of blood had resolved on December 5, 2013.  *Id.* at 0029.  Medications were prescribed. *Id.*

On December 13, 2013, Wagner refused to attend a sick call visit.  Wexford Ex. A at 0194.  The next day, December 14, 2013, Wagner refused to be seen for a follow-up visit.  *Id.* at 0031.

Cortez examined Wagner at 8:11 p.m. on December 31, 2013, following a use-of-force incident during which pepper spray was administered. Wagner reported an injury to his lip from a "pepper ball round."  Wexford Ex. A at 0032.  The report noted bleeding from a "superficial injury" to Wagner's lower lip, *id.* at 0033, but that Wagner's lungs were clear, there was no wheezing, and there was no eye swelling.  Wexford Ex. A at 0032-33.

At 10:41 p.m. on January 1, 2014, Wagner was examined by Lisa Shell, RN, after he was found lying in his cell with his face in a small amount of blood.  Wexford Ex. A at 0035.  *See also id.* at 0040.  Wagner was responsive, talking, and complaining that his handcuffs were too tight and that this was a matter for an internal investigation.  *Id.* at 0035.  It was noted that Wagner's eyes were red, he had difficulty keeping his eyes open, and his nasal passages were red and irritated.  Although Wagner's vital signs were within normal limits, *id.*, he "spit up about 90 ml of blood tinged sputum.  *Id.* at 0037.  There were no open areas in Wagner's mouth (*id.* at 0035) and Shell could not find a source for the blood found in Wagner's cell.  *Id.*  The medical report also indicates Wagner was able to move all of his extremities and that his sensation was intact.  *Id.* at 0037.  Repeated observations of Wagner were made throughout the night and into the morning of January 2, 2014, as documented in the medical record.  *Id.* at 0037-39.  In addition, lab work was drawn.  *Id.*

Wagner was admitted to the infirmary on January 1, 2014, related to his complaints. *Id.* at 0039. He was discharged to the NBCI Observation Unit on Jan. 2, 2014. *Id.* Dr. Ottey ordered Wagner transferred as a suicide precaution. *Id.* at 0037.

Also on January 1, 2014, and before the transfer for "suicide precautions," Karen Myers, RN, reported that Wagner "[a]rrived ambulatory [to the infirmary] with 3 officers at 22:35," and said: "'My belly is a little tender. I have been coughing up blood since October.'" Wexford Ex. A at 0037. She also noted that Wagner complained, *inter alia*, of left wrist pain. No wounds or swelling were noted, and he was examined. *Id.* Labs were also drawn. *Id.*

The medical record for January 2, 2014, contains the following entry by Renato Espina, M.D., made at 9:41 a.m. on that date, Wexford Ex. A at 0039:

> 36 year old inmate admitted to infirmary for observation of possible "bleeding[.]" Inmate alleged that he actually vomited some blood. This was not witnessed or documented by CO [correctional officer] or nursing staff. They observed some blood tinged sputum but not much blood. Complained of sore and swollen wrists from tight cuffs. No nausea or vomiting this AM. No bleeding site in his oral cavity and lips. There is a small canker sore on the right lower lip. Abdomen is non tender.

The report shows Wagner's "Chemanel" lab tests were normal. *Id.* Dr. Espina noted that Wagner was discharged to the NBCI Observation Unit.

Nurse Delores Adams also examined Wagner in the infirmary on January 2, 2014. Wagner reported wrist pain from wearing handcuffs the previous evening. Wexford Ex. A at 0040. Adams observed that Wagner was alert, denied rectal pain or bleeding, and his gait was steady. There was a slight swelling to the lower lid of his right eye and a small ulceration to the corner of his lower lip. *Id.* Wagner stated: "I aint going back [to NBCI] till I see someone, them officers over there are trying to kill me and beating me up[.]" *Id.*

Also on January 2, 2014, Cortez wrote on Wagner's chart: "Patient received from infirmary with no medical complaints per infirmary RN report. Patient on suicide precautions per MD order." Wexford Ex. A at 0041. Additionally, Cortez wrote: "Patient aware of sick call process." *Id*.

On January 7, 2014, plaintiff refused an appointment related to a "gash in mouth with pus." *Id.* at 0042, 0193. A Release of Responsibility form was completed.

Dr. Ottey examined Wagner on January 16, 2014, for wrist pain. Wexford Ex. A at 0044. Wagner reported no numbness, tingling, or stiffness. *Id.* Dr. Ottey prescribed Naprosyn. *Id*. at 0043, 0045.

On January 20, 2014, Wagner refused his sick call for his complaints of back discomfort, blurred vision, and blood in his vomit. *Id.* at 0046, 0192. He again refused a sick call on February 2, 2014, which he had requested for blood in his sputum, vision problems, and back discomfort. *Id.* at 0047, 0191.

Nurse Dawn Hawk examined Wagner on February 10, 2014, for lower back pain. *Id.* at 0048. He was examined on February 22, 2014, by Jennifer Bradfield, RN, for complaints of back pain, vomiting of blood, and asthma. *Id.* at 0051-55. On February 25, 2014, Quinta Lum, PA, examined Wagner in response to his complaints of back pain and asthma. *Id.* at 0058-59. Lum ordered x-rays of Wagner's spine. *Id.* at 0057.

On February 27, 2014, Wagner reported to James Hunt, RN, that he had been experiencing blurry vision since January 3, 2014, as a result of "a scuffle with a CO. . . ." *Id.* at 0060. Hunt observed that Wagner's eyes appeared normal, without redness, and with only minor swelling. *Id.* Hunt observed that Wagner's eye movement was good. *Id.* Medications were prescribed. *Id.* at 0061-62.

Janette Clark, NP, examined Wagner on March 7, 2014, for complaints of eye discomfort, back discomfort, and vomiting. *Id.* at 0064. Clark referred Wagner to an optometrist, ordered spinal x-rays, and ordered a complete blood count.  *Id.* at 0063-64.

Wagner's spine was x-rayed on March 7, 2014.  Wexford Ex. A at 0063.  The x-rays showed no evidence of an acute fracture, dislocation, or subluxation and "No acute disease."  *Id.* The x-ray further showed the vertebral body heights and disc spaces were preserved. *Id.*

Travis Barnhart, LPN, saw Wagner on March 14, 2014.  *Id.* at 0067.  Then, on March 19, 2014, Kimberly Martin, RN, examined Wagner for complaints of psoriasis, vision problems, and issues with Wagner's foot.  *Id.* at 0068. Martin ordered Fluocinonide cream for Wagner's psoriasis, and informed him that a consultation with the optometrist had been ordered. *Id.*

On March 21, 2014, Katie Winner, PA, reviewed Wagner's x-rays with him. *Id.* at 0070. He was also seen by Travis Barnhart, LPN, on April 1, 2014.  *Id.* at 0072.

Wagner refused an appointment with a physician on April 5, 2014.  *Id.* at 0189.  Then, on April 9, 2014, plaintiff refused his sick call, which he had requested for treatment of migraines and discomfort in his leg.  *Id.* at 0188.

Janette Clark, NP, examined Wagner on June 10, 2014, for back, thumb, and toe pain.  *Id.* at 0076. She observed that Wagner had no difficulty getting on or off the exam table.  *Id.*  She also observed that Wagner's thumb had full range of motion. *Id.* The results of his recent x-rays were noted. *Id.*

On June 18, 2014, Cortez examined Wagner for complaints of pain in his back, right thumb, and left leg pain.  *Id.* at 0078. Cortez reminded Wagner that he had pending lab work for review and encouraged him to take all prescribed medications. *Id.*

On July 10, 2014, Robert Claycomb, RN, examined Wagner for complaints of spitting up blood. *Id.* at 0081. Thereafter, on July 18, 2014, Dr. Joubert examined Wagner for Hemoptysis (spitting up blood) (*id.* at 0085) and ordered chest x-rays. *Id.* at 0084. The x-rays showed that his lungs were clear, the mediastinal structures and cardiac silhouettes were within normal limits, and no gross osseous abnormalities were noted. *Id.* Wagner refused to have his blood drawn. *Id.* at 0087.

Wagner refused medical treatment on July 31, 2014, indicating that he did not want to be seen. *Id.* at 0088. Wagner refused to attend his sick call appointment on August 15, 2014, even though he had requested the appointment due to complaints of bloody emesis (vomiting). *Id.* at 0089-0090, 0186.

Nurse Claycomb examined Wagner on August 28, 2014, for numbness and tingling in his left big toe and right thumb. *Id.* at 0091. He also refilled Wagner's Baclofen prescription. *Id.*[16]

On September 3, 2014, Nurse Clark examined Wagner for complaints of pain in the left toe and left thumb. *Id.* at 0095-0096. X-rays were ordered, *id.* at 0094, of Wagner's left foot and right hand (*id.* at 0094), which showed no evidence of an acute fracture, dislocation, or subluxation. *Id.* at 0184.[17]

On September 7, 2014, Wagner refused his sick call, which was intended to allow him to review the results of his x-rays. *Id.* at 0159. Wagner refused an eye exam on September 11, 2014. *Id.* at 0185.

---

[16] Baclofen is a medication which may be prescribed for pain and to improve muscle movement. *See* https:// www.nlm.nih.gov/medlineplus/ druginfo/meds/a682530.html.

[17] I note the discrepancy in regard to the reference to complaints in the left hand and the x-ray of the right hand. I assume that Wagner would have voiced concern if the wrong hand were x-rayed, and presumably the reference to left thumb is a transcription error.

At 1:13 a.m. on September 12, 2014, Nurse Durst examined Wagner after he was extracted from his cell and administered pepper spray. *Id.* at 0098; 0101. Durst observed a small amount of blood in the corner of Wagner's mouth, but no evidence of oral trauma. *Id.* at 0098. Wagner's teeth were intact, and he did not report any new injuries. *Id.* Plaintiff was escorted from the medical room for pepper spray decontamination. *Id.*

Wagner refused to be seen on September 17, 2014, to receive the results of his x-rays, as well as follow-up for his complaints of abdominal pain and reported vomiting of blood. Wexford Ex. A at 0104.

Nurse Clark evaluated Wagner on September 24, 2014, after a "use of force" incident. *Id.* at 0105-0106. Examination showed Wagner had two small lacerations on his forearm and a superficial laceration on his right hand. *Id.* Also, on September 24, 2014, Nurse Claycomb examined Wagner for complaints of blurred vision and abrasions. *Id.* at 0107. The abrasions were cleaned and treated with bacitracin ointment. *Id.* Band-Aids were applied to the small scratches on Wagner's hand. Wagner's mouth was inspected for bleeding areas, and none was noted. *Id.*

Nurse Hunt examined Wagner on September 25, 2014, for complaints of vomiting blood. *Id.* at 0108. Hunt was unable to find a source for the bleeding. *Id.* Hunt wrote: "I am told by staff that he causes himself to bleed." *Id.*

On September 29, 2014, Nurse Hawk examined Wagner for complaints as to his left eye, wrist, and back pain. *Id.* at 0109. Hawk noted that Wagner's left eye had a "healing abrasion" and there was no bleeding, swelling, or discharge. *Id.* Wagner's range of motion of his right wrist was within normal limits and he did not have any difficulty getting on or off the exam table. *Id.*

16

Nurse Claycomb examined Wagner on October 16, 2014, for complaints of blood in his stool, vomiting blood, back pain, and migraine headaches. *Id.* at 0111. He was to be referred for further evaluation. *Id.*

On October 22, 2014, Michele Junkins, LPN, examined Wagner. He refused to accept Ibuprofen, stating: "[T]his makes me bleed." Wexford Ex. A at 0113; *see also id.* at 0114-0115. Stool test results were recorded in Wagner's chart on October 27, 2014. *Id.*at 0116. The cards were positive for blood, and a follow up was ordered. *Id.*

Dr. Joubert examined Wagner on October 31, 2014, in response to his complaint of generalized joint pain. *Id.* at 0118. Joubert noted the "need to ck hepatic function," *id.*, and ordered x-rays of Wagner's face and right hand. *Id.* at 0117. The x-rays revealed no evidence of an acute fracture, dislocation, or subluxation. *Id.*

Wagner was seen by Nurse Hunt on November 9, 2014. *Id.* at 0120. Dr. Ottey examined Wagner on November 15, 2014. *Id.* at 0122-123. Wagner refused to be seen on November 16, 2014, November 17, 2014, November 18, 2014, and November 19, 2014 (*id.* at 0127) because he was on a hunger strike. *Id.* at 0124-0127. However, he was seen on November 20, 2014 (*id.* at 0128), but again refused to be seen on November 21, 2014. *Id.* at 0129-130.

On December 1, 2014, Mahmoob Ashraf, M.D., examined Wagner. *Id.* at 0131-0133. It was noted that Wagner was having vision problems, and Dr. Ashraf referred Wagner to the optometrist. *Id.* at 0131.

On December 8, 2014, Wagner informed Nurse Hawk that all of his complaints related to pain in his back, thumb, and wrist had been handled at the sick call with Dr. Ashraf on December 1, 2014. *Id.* at 0136.

Nurse Hunt saw Wagner on December 21, 2014, for complaints of pain. *Id.* at 0139. It was noted that plaintiff's thumb was swollen, but that this was likely due to a tightly wrapped ace bandage. *Id*. Plaintiff was prescribed Tylenol. *Id*. at 0136.

Wagner refused sick calls on December 27 and 31, 2014, and January 6, 2015 and January 22, 2015. *Id.* at 0143-0145; 0147; 0177; 0150-0151. However, on January 20, 2015, Wagner inquired about lab work ordered in October 2014 that had not been drawn. *Id.* at 0149. He asked again on February 1, 2015. *Id.* at 0155. Thereafter, an email was sent to the "lab draw coordinator." *Id.*; *see also id.*at 0156.

Shawna Shumaker, RN, examined Wagner on January 30, 2015, for his complaint of back pain. *Id.* at 0152. On February 9, 2015, Nurse Hawk examined Wagner for lower back pain. The medical chart indicates that Wagner's back was straight and his gait was within normal limits. *Id.* at 0157.

On February 17, 2015, Krista Swan, RNP, examined Wagner for complaints of back pain, and noted on the chart that he had injured his back in January. Wexford Ex. A at 0159. The medical report states that Wagner was able to bend and twist without difficulty. *Id.* Swan prescribed Mobic[18] and continued Wagner on Baclofen. *Id.* The record reflects that labs were obtained on February 4, 2015, and Wagner asked about the results. *Id.* According to the results, Wagner's "PDA [was] elevated," which was discussed with Wagner. *Id.* The note also states: "Will reorder to confirm elevation. Pt denies any urinary difficulties." *Id.*

Wagner returned his Mobic and Meloxicam prescriptions on February 19, 2015, stating that they were ineffective. *Id.* at 0161-0162. And, on February 20, 2015, Nurse Practitioner

---

[18]    Mobic   is   a   non-steroidal   anti-inflammatory   drug   ("NSAID").   *See* http://www.fda.gov/downloads/Drugs/ DrugSafety/ ucm088646.pdf.     NSAID medicines are used to treat pain and swelling. *Id*.

Swan saw Wagner because of his complaints that his medications (Mobic and Baclofen) were ineffective. *Id.* at 0163. Wagner, who was previously provided Naproxen, Elavil, and Medrol, stated that only Tylenol-3 provided effective pain relief. *Id.* Wagner asked to speak with a physician, and a referral was made. *Id.* at 0164. On February 25, 2015, Wagner met with Swan for a follow-up visit to discuss his pain treatment plan. *Id.* at 0165.

On February 27, 2015, Dr. Ashraf examined plaintiff for lower back pain and prescribed Neurontin for him. *Id.* at 0166. On March 19, 2015, Ashraf again examined Wagner for complaints of lower back pain. *Id.* at 0169. An x-ray of Wagner's lumbosacral spine was taken, and it revealed no evidence of an acute fracture dislocation or subluxation. *Id.* at 0168.

Lab test results were discussed with Wagner on March 20, 2015. *Id.* at 0171.

On March 29, 2015, Nurse Hunt examined Wagner for complaints of back and thumb pain. *Id.* at 0173. The report reflects that Wagner "started on Neurontin 1 week ago" and Hunt explained that Neurontin may take time to take full effect. *Id.* It was noted that Wagner "had a slight exaggerated limp" but alighted from the exam table without difficulty. *Id.*

Wagner's medical records also include Release of Responsibility ("ROR") forms for refusing: 1) a physician sick call on December 13, 2013; 2) a sick call on January 4, 2014, for pus in his mouth from a gash; 3) a medical visit on January 20, 2014; 4) a medical follow-up on January 31, 2014; 5) a sick call visit on February 2, 2014; 6) a sick call visit on April 4, 2014; 6) an eye exam on September 11, 2014; 7) a physician sick call on April 5, 2014; and 8) a medical assessment on September 9, 2013. These forms were signed by two witnesses and/or by

Wagner.  Wexford Ex. A at 0185, 0188, 0189, 0191-0195.  A second witness is required in instances where an inmate refuses to sign a ROR form.  *Id.*[19]

### 2.  Affidavits

In support of the motion for summary judgment, the Medical Defendants have filed affidavits executed by Kristi Cortez, RN (ECF 105-5) and Autumn Durst, CRNP (ECF 105-6).[20] As noted, Wagner has also submitted his own declarations, to which I have made reference. And, he has offered declarations from other inmates.

Fellow inmate Tavon Singletary states that Wagner asked Cortez and Durst on two occasions to pull him out of his cell for dizziness.  ECF 134-3, Decl. of Tavon Singletary at 2 (filed separately; not filed on CM/ECF).  Singletary states that Wagner was denied medical assistance after various assaults.  *See* plaintiff's Ex. 5.  Singletary acknowledges that Durst told Wagner to file a sick call slip. *Id.*  Inmates Walter Edward Hall and Rodney Solme attest in their declarations that Cortez and Durst did not administer treatment to Wagner for swelling on his head after he fell. ECF 134-3, Decl. of Walter Edward Hall and Decl. of Rodney Solome (filed separately; not filed on CM/ECF).  However, the affidavits fail to indicate where the inmates were located at the relevant times or how they were able to hear and/or see the nurses' interaction with Wagner.

---

[19]  The unsigned ROR forms in Wagner's medical record are for dates after the incidents at issue and are not relevant to matters under review. ECF 104-4 at Wexford. Wagner 0124-0127, 0130, 0138, 0145, 0147, 0151   (unsigned ROR forms dated November 16, 2014, November 17, 2014, November 18, 2014, November 19, 2014, November 21, 2014, December 12, 2014, December 27, 2014, December 31, 2014, January 6, 2015, January 22, 2015).

[20] Durst became a CRNP after she left Wexford.  ECF 105-6 ¶ 4.

Cortez is currently employed by Wexford.  ECF 105-5 ¶ 1.  She examined Wagner after

alleged use of force incidents on October 31, 2013; December 13, 2013; December 31, 2013; and

January 1, 2014.  ECF 105-5 ¶ 3.  As to December 31, 2013, she attests, *id.*:

> 4.  I examined plaintiff on December 31, 2013, after correctional officers used
> pepper spray on him.  I performed an examination of Plaintiff, and did not follow
> the directions of Sgt. Justin Gordon when I was documenting this medical visit.
> The record attached hereto accurately reflects my observations of Plaintiff on
> December 31, 2014. [21] [Citation omitted.]  I observed that Plaintiff had a
> superficial injury to his lower lip.  At the time of my examination, Plaintiff was not
> "bleeding profusely" and was not having a difficult time breathing.
>
> 5.  The medical records I transcribed regarding Plaintiff's condition at the time of
> any examination I performed of him was based solely on my own examination of
> him. At no time have I followed the instructions of anyone to include certain
> statements or findings regarding his condition.
>
> 6.  I have not ignored any requests of Plaintiff in which he attempted to obtain
> medical care.  These complaints were likely made to me while I was on
> "segregation rounds."   Segregation rounds are to determine whether a prisoner
> requires emergency medical care and are intended to check the health and well-
> being of an inmate.  An inmate who requires non-emergent care must submit a sick
> call slip to a correctional officer in order to obtain medical care.
>
> 7.  At no time did I observe that Plaintiff required medical care and refused to
> provide him with that care.

Durst is a former Wexford employee.  ECF 105-6 ¶ 1.  In her Affidavit (ECF 105-6),

Durst avers that she examined Wagner on September 12, 2014, after a cell extraction and

administration of pepper spray.  *Id.* ¶ 5.  She states the record of that examination accurately

reflects her observations.[22]  *Id.*  Painter attests:

> 6.  I have not ignored any requests of Plaintiff in which he attempted to obtain
> medical care.  These complaints were likely made to me while I was on

---

[21] I will assume the reference to December 31, 2014, was an inadvertent error, as the date of the visit was December 31, 2013.

[22]  I shall assume subsequent references to the examination on "September 2, 2014" are inadvertent typographic errors because the medical record of the examination is dated September 12, 2014.

"segregation rounds."  Segregation rounds are to determine whether a prisoner requires emergency medical care and are intended to check the health and well-being of an inmate. A prisoner who requires non-emergent care must submit a sick call slip to a correctional officer in order to obtain medical care.

7.  At no time did I observe that Plaintiff required medical care and refused to provide him with that care.

Additional facts are included in the Discussion.

## D.  DISCUSSION [23]

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991)).

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that defendants' actions or failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Objectively, the medical condition at issue must be serious, because there is no expectation that prisoners will be provided with unqualified access to health care.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992).   Proof of an objectively serious medical condition, however, does not end the inquiry.

---

[23] I incorporate here the standard of review outlined in my earlier Memorandum Opinion (ECF 82 at 24-29).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In order "[t]o show an Eighth Amendment violation, it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction."  *Lightsey*, 775 F.3d at 178.  In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner.  *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).

The Fourth Circuit has explained:  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  It also said:  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer* 511 U.S. at 844).

The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.  It noted in *Lightsey* that deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Young*, 238 F.3d at 575.  Moreover, in a case

involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.   Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000 (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105; *see Makdessi v. Fields*, 789 F.3d 126, 133, (4th Cir. 2015).  And, "[a] prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence. . . ." *Makdessi*, 789 F.3d at 134.

Notably, "[a] prisoner's disagreement with medical providers about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances." *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at *2-3 (D. Md. June 4, 2012) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *see Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).  Moreover, "any negligence or malpractice on the part of … doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).  Although the Eighth Amendment proscribes deliberate indifference to a prisoner's serious medical needs, it does not require that a prisoner receive medical care by a provider of his choice.  Rather, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential

test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Wagner contends that his medical records cannot be trusted to determine whether he received constitutionally adequate medical care because the records are inaccurate and false. He maintains that Sgt. Gordon instructed Nurse Cortez not to document Wagner's injuries on December 31, 2013.   In his Declaration (ECF 118-17), Gordon denies Wagner's allegations and states he was not present in the infirmary at the time.   *Id.* at ¶ 4.   Cortez also directly refutes Wagner's assertion in her Affidavit. ECF 136-3.   Cortez maintains the medical record accurately reflects her observations and medical findings made contemporaneously with Wagner's examination on December 31, 2013.   *Id.* ¶ 4.   Specifically, she did not observe Wagner bleeding profusely, nor was he having difficulty with breathing, as he claims.   *Id.*   In sum, Cortez denies she followed anyone's instructions to include certain statements or findings concerning Wagner's medical condition.   *Id.*

Wagner's self-reported account of his medical treatment is refuted by the contemporaneous medical record from December 31, 2013, which indicates that Wagner denied any medical complaint, and "reports" his lip was "busted from a pepper ball round."   Wexford Ex A at 0032.   No injuries were observed and Wagner denied medical complaints.

As noted, Wagner claims his medical records were disposed of or ignored. These assertions are conclusory, self-serving, and unsupported by the ample record. Moreover, Wagner does not particularize the nature of the records purportedly destroyed or ignored.   In effect, plaintiff suggests that licensed health care providers, with no motive to falsify medical records, fabricated the entries they made and/or conspired with other health care providers and correctional officers to deprive Wagner of medical care.   Viewing the facts in the light most

favorable to Wagner, the medical record is clear that Wagner has received constant, on-going medical care and treatment for his reported injuries and ailments.

Regarding Wagner's allegation that he was deprived of medical care after an incident on October 31, 2013,[24] the medical record shows he was examined and received x-rays two days after his sick call slip was stamped received. The records from his medical examination on November 6, 2013, show Wagner had three superficial scratches behind his ear, a steady gait, no cracked teeth, and alighted from the examination table without difficulty. *Id.* Although Wagner did not receive the immediate medical care that he believes he required, a delay in responding to a nonemergency medical request does not rise to the level of an Eighth Amendment constitutional violation.

Cortez and Durst deny Wagner's allegations that they failed to provide medical treatment for serious medical needs or ignored Wagner's requests for medical care. Instead, they explain that inmates are required to submit a sick call slip for non-emergency requests for medical care. The nurses made rounds on the prison tier to determine whether a prisoner required emergency medical care. Indeed, Wagner acknowledged that Durst had instructed him during rounds to submit a sick call slip. ECF 132-1 at 12. Wagner's allegation that Cortez and Durst failed to inspect a "knot" or bump on his forehead during those rounds does not evidence deliberate indifference to his serious medical needs. Requiring Wagner to follow prison regulations and submit a sick call request for treatment of a non-emergency injury or ailment simply does not rise to the level of deliberate indifference, in violation of the Eighth Amendment.

---

[24] As discussed in my Memorandum Opinion of March 19, 2015, Wagner's allegations concerning the October 31, 2013, incident were investigated by the Internal Investigation Unit. After conducting interviews with staff and reviewing medical records and video footage, it recommended closing the case because there were multiple discrepancies in Wagner's account of the incident, including his claims of injury. ECF 82 at 33.

Medical providers, including Doctor Ottey, Nurse Cortez, and Nurse Durst, attended to Wagner for his claims of injury to his teeth, finger, shoulder and eye. Wagner's medical records do not substantiate his claims of sustaining broken or chipped teeth or a broken finger.  Wagner does not dispute that he was provided x-rays for complaints of finger, shoulder, and back injury, and no fractures were found. Wagner's eyes were examined and he has been provided eyeglasses.  He was also provided an ace wrap for wrist pain by Dr. Ottey. Wexford Ex. A. at 0022. Additionally, Wagner was provided analgesics and other medication to address his reports of pain.

Wagner's disagreement with Dr. Ottey's treatment does not equate with deliberate indifference to a serious medical need. Similarly, Wagner's claim that Nurses Durst and Cortez failed to attend to his non-emergency complaints during medical rounds does not demonstrate deliberate indifference.

As to Wexford, it is a private corporation that provides medical care to NBCI inmates pursuant to a written contract with the State of Maryland.  Wexford has moved for dismissal or summary judgment based on principles of respondeat superior.  ECF 105-3 at 22.  Wexford is entitled to summary judgment on this ground.

For these reasons, viewing Wagner's allegations in the light most favorable to him, the record does not support a finding that Dr. Ottey or Nurse Durst acted in a manner that was deliberately indifferent to Wagner's serious needs. To be sure, Wagner disagrees with the course of medical care and the alacrity with which it was provided to him at times, but this does amount to a matter of constitutional magnitude. No genuine issues of material fact are at issue here and Dr. Ottey and Nurse Durst are entitled to summary judgment in their favor.  Similarly, with the exception of Wagner's claim that he was denied a decontamination shower on December 31,

2013, there are no material facts in dispute to demonstrate Nurse Cortez acted with deliberate indifference to Wagner's serious medical needs. Accordingly, Nurse Cortez is entitled to summary judgment, except as to the decontamination shower claim.

Accordingly, I shall grant the Medical Defendants' motion for summary judgment in part and deny it in part. I will grant summary judgment in favor of Wexford, Dr. Ottey, and Autumn Durst. I will grant summary judgment in favor of Kristi Cortez as to all claims, except as to Wagner's claim that she denied him a decontamination shower after he was exposed to chemical agents on December 31, 2013.

## II.       THE MOTIONS OF THE STATE DEFENDANTS AND PLAINTIFF

Wagner's remaining claims concern allegations of excessive force used against him by correctional officers on December 13, 2013, and January 1, 2014. He also claims that Sgt. Gordon told Nurse Cortez what to write in the medical chart on December 31, 2013, and that Officer Eagleson solicited an inmate to harm him. ECF 83.

### A.  Claims and Factual Summary

Wagner has moved for partial summary judgment. ECF 134. He claims that on December 13, 2013, he was assaulted by Cpl. Gregory Shaffer, Cpl. Adam Logsdon, Cpl. Jesse Lambert, III, and Sgt. Seven Roach in retaliation for filing a grievance against then Warden Shearin. ECF 16 at 4. He also contends that Shaffer and other correctional officers refused to comply with his medical order for hand-cuffing from the front. ECF 134-2. Rather, Wagner asserts that he was handcuffed in the back, his arm and wrist were twisted, he was forced to his knees, and his head was slammed to the concrete, in violation of prison policy. *See* ECF 134-2.

Wagner further claims that on January 1, 2014, corrections officers brutally assaulted him, and used a wellness check to retaliate against him, after his cell extraction the previous day.

ECF 134-1 at 2; ECF 134-2.  In his submissions, Wagner describes the assault and the officers who were allegedly involved.  ECF 134-2.  In particular, he claim that defendants Sgt. Justin Gordon, Sgt. Gregory Forney, Sgt. Steven Roach, Sgt. Jeremy Crites, Cpl. Jonathan Sharon, C.O. I Christopher Preston, and Cpl. Matthew Eagleson assaulted him during the wellness check. ECF 16 at 12.  According to Wagner, they sprayed him with a chemical agent and beat and kicked him in the chest, stomach, head, and back.  *Id*; *see also* ECF 16 at 12, 14. Wagner also claims his nose was "busted."  *Id.*  And, he contends that Sgt. Gordon "told the nurses what to write in the medical report."  *Id.* at 15.

Defendants Corporal Gregory Shaffer; Corporal Jesse L. Lambert, III; Sgt. Steven Roach; Sgt. Gregory Forney; Sgt. Jeremy Crites; Cpl. Matthew Eagleson.; Sgt. Justin Gordon; Cpl. Jonathan Sharon; C.O. I Christopher Preston; and C.O. II Nathan Logsdon have renewed their prior dispositive motion (ECF 118) and have submitted many exhibits.[25]

The State Defendants have submitted copies of affidavits filed by inmates Ericky Bogues, Matthew Oakes, and Raymond Hurt.  ECF 118-2; ECF 118-3; ECF 118-4. These affidavits were originally filed by Wagner in support of his Complaint.  ECF-19 attachments.  Yet, as noted in my earlier Memorandum Opinion (ECF 82 at 10), they previously were not addressed by the State Defendants.

Bogues attests in his Affidavit of January 30, 2014 (ECF 118-2) that on January 2, 2014, he saw Wagner coming down the tier "clearly battered and not himself."  *Id.* at 1.  Wagner's right eye was swollen almost shut.  His beard was matted with dry blood and he was hunched, limping, and naked. *Id*.  Bogues further avers that Officer Eagleson solicited "AB to get rid of Yahya [*i.e.*, Wagner] and gave him razors[.]" *Id.* at 2.  In addition, he asserts that "one day

---

[25] As noted, the State Defendants' exhibits, filed in support of their earlier dispositive motion (ECF 75), will also be considered, where pertinent.

another inmate flooded the tier with fecees [sic] and pee, they cleaned all the cells except Yahya's . . . ." *Id.*  In addition, Bogues avers that plaintiff "suffered four attacks administered by the very officer he continuously submitted ARP's on nothing never been done . . . ." *Id.*

Oakes attests in his Affidavit of January 30, 2014, that on January 2, 2014, Wagner's right eye was swollen shut and he could barely stand on his own as he was escorted down the tier.  ECF 118-3; *see also* ECF 19 – Attachment.

Hurt states in his Declaration of March 20, 2014, that "on a day not remembered during the month of February C.O. Eadeson [sic] made a request for me to fuck the nigger in 20 up . . . ." ECF 118-4 ¶ 5. ECF 19 – Attachment.[26]

The State Defendants have also provided declarations from various correctional officers, including C.O. II Adam Logsdon (ECF 118-8); C.O. II Gregory Shaffer (ECF 118-9); C.O. II Jesse Lambert, III (ECF 118-10); former Sergeant Steven Roach (ECF 118-11); Corporal Matthew Eagleson (ECF 118-12); Correctional Dietary Officer Jonathan Sharon (ECF 118-13); C.O. II Christopher Preston (ECF 118-14); Sergeant Gregory Forney (ECF 118-15); Sergeant Jeremy Crites (ECF 118-16); and former Sergeant Justin Gordon (ECF 118-17).  Most of the correctional officers are have worked for the Maryland Department of Public Safety and Correctional Services for many years. *See*, *e.g.*, ECF 118-17 (stating that Gordon worked for DPSCS for seven years).[27]

All of the officers deny having assaulted Wagner on December 13, 2013 or January 1, 2014.  Additionally, Sgt. Gordon denies ever instructing Nurse Cortez as to what to write on

---

[26]   The State Defendants have filed, without explanation, the adjustment records for inmates Bogues, Oakes, and Hurt. ECF 21-23.  As counsel is undoubtedly aware, considerations of credibility are determined at trial, not on motions for summary judgment.

[27] Roach omitted from his Declaration the number of years that he was employed by DPSCS.  *See* ECF 118-11 ¶ 2.

Wagner's medical chart.  And, Officer Eagleson denies attempting to solicit an inmate to harm Wagner.  Notably, there is no indication that may inmate ever hurt Wagner.

As to December 13, 2013, Logsdon denies assaulting plaintiff on December 13, 2013. He states that, due to an institutional lockdown, front cuff orders were generally overridden by security concerns. ECF 118-8.  Logsdon attests that during the fall of 2013, Wagner, "a known disciplinary concern," was "particularly disruptive and dangerous."  *Id.* at 1-2.   Logsdon avers, *id.* at 2:

> 6.    On December 13, 2013, when being escorted back to his cell, Mr. Wagner resisted being cuffed in the normal fashion, and we had to obtain compliance.  The amount of force involved was minimal and Mr. Wagner was not injured.  I deny that I slammed Mr. Wagner's head into a concrete floor, and I saw no other correctional officer assault Mr. Wagner.
>
> 7.    I deny that I retaliated against Mr. Wagner because of grievances that he filed.  Mr. Wagner repeatedly filed frivolous grievances and such grievances were not a concern.
>
> 8.    Mr. Wagner was not denied access to ARP forms and he filed ARP NBCI-4445-13 a few days later. [28]  This ARP was dismissed.

Shaffer denies Wagner's allegation that excessive force was used against him on December 13, 2013.  ECF 118-9 ¶ 4.  He attests that he did not work the shift on December 13, 2013, when this incident is alleged to have occurred.  *Id.* ¶ 5.  Shaffer also denies witnessing any staff ever assaulting Wagner.  *Id.* ¶ 6.

Lambert denies Wagner's allegations with respect to the alleged assault on December 13, 2013.  ECF 118-10, ¶ 4.  He states that, due to an institutional lockdown, front cuff orders were generally overridden by security concerns, and Wagner was a known disciplinary concern.  *Id.* ¶ 5.  He avers, *id.*:

---

[28]   *See* ECF 118-5 (ARP NBCI 4445-13); ECF 118-6 (Order for front cuffing dated July 24, 2012).

6.     On December 13, 2013, when being escorted back to his cell, Mr. Wagner resisted being cuffed in the normal fashion, and the correctional officers had to obtain compliance.  The amount of force involved was minimal and Mr. Wagner was not injured.

7.     Mr. Wagner does not even allege that I had any involvement in obtaining his compliance.  I deny that Cpl. Gregory R. Shaffer or Cpl. Adam R. Logston [sic] slammed Mr. Wagner's head into a concrete floor.

8.     I deny that I retaliated against Mr. Wagner because of grievances that he filed.

Roach attests that on December 13, 2013, while Wagner was being escorted to his cell, Wagner resisted handcuffing in the normal fashion. ECF 118-11 ¶ 6.  According to Roach, Wagner "is a known disciplinary concern" (*id.*¶ 5) and correctional officers "had to obtain compliance." *Id.*¶ 6.  The amount of force involved was minimal and Wagner was not injured.

Wagner does not allege Roach was involved in obtaining his compliance.  Roach denies that Cpl. Shaffer or Cpl. Logsdon slammed Wagner's head into the concrete floor.  ECF 118-11 ¶ 7.  Roach also denies retaliating against Wagner because of filing grievances.  *Id.*  ¶ 8.

In regard to the alleged assault of Wagner on January 1, 2014, Roach avers that Wagner's allegations are false.  *Id.* ¶ 10.  He asserts, ECF 118-11:

11.     Mr. Wagner was placed on Staff Alert on December 30, 2013 and December 31, 2014. On the evening of December 31, 2013, a cell extraction was conducted and Mr. Wagner was evaluated in the infirmary.  Mr. Wagner was placed in Cell 1-C-3s and kept under watch.

12.     About 9:35 p.m. on January 1, 2014, CO II M. Henderson informed me that Mr. Wagner was unresponsive.  As the Officer in Charge, I organized Sgt. Justin Gordon, CO II Charles McMillan, CO II Matthew Eagleson and CO II Jonathan Sharon to assist in a wellness check.

13.     When we arrived at Cell 1-C-3s Inmate Wagner was lying face down on the floor. There was a red substance on the floor by where he was laying and it appeared that he had been spitting a red substance on the walls of the cell.  I attempted to get Inmate Wagner's attention and was unsuccessful.

14.     I ordered Officer McMillan to stand by the cell with the security shield.  I

instructed Officers Eagleson and Sharon to place hand cuffs on the inmate.  I instructed Sgt. Gordon to stand by with the pepperball launcher.

15.    When we were organized, I called to have the door opened. Officer McMillan entered with the shield, Officer Sharon placed a handcuff on Mr. Wagner's right wrist and Officer Eagleson placed a hand cuff on his left wrist.

16.    Inmate Wagner was escorted by Officers Sharon and Eagleson to the medical exam room.  Inmate Wagner was examined by two medical staff nurses.

17.    Officers Sharon and Eagleson then escorted Inmate Wagner to the property strip case where he was strip searched and pictures were taken.

18.    Based on the instructions from the medical staff, inmate Wagner was then escorted to the infirmary at Western Correctional Institution.

*****************

20.    The removal of the nonresponsive Mr. Wagner for medical evaluation was handled quickly and without incident.

21.    I did not improperly assault Mr. Wagner and I have no knowledge that any other correctional officer assaulted Mr. Wagner in the manner alleged on January 1, 2014.

Eagleson has been employed by the DPSCS since August 29, 2008.  ECF 118-12, ¶ 2.

He maintains that Wagner's allegations are false in regard to an assault on January 1, 2014. ECF

118-12 ¶ 4.  Eagleson reports a use-of-force incident on December 31, 2013, in order to evaluate

Wagner.  *Id.* ¶ 5.  He explains that on January 1, 2014, Wagner was lying face down on the floor

near a red substance.  *Id.* ¶ 7.  Sgt. Roach ordered Eagleson and Officer Sharon to place

handcuffs on Wagner. *Id.* ¶ 8.  The removal of the "nonresponsive Mr. Wagner for medical

evaluation was handled quickly and without incident."  *Id.* ¶ 9.  Eagleson and Officer Sharon

escorted Wagner to the medical exam room and then to the property strip cage where he was

searched.  *Id.* ¶¶ 10, 11.  Eagleson denies Wagner's allegations that he and Sharon slammed

Wagner's face into the cage.  *Id.* ¶ 11.

Wagner was escorted to the infirmary at Western Correctional Institution ("WCI") per the

instructions of medical staff. *Id.* ¶¶ 11, 12. Eagleson states that neither he nor any officers involved in the transport to WCI assaulted Wagner. *Id.* ¶ 12. Eagleson also denies threatening Wagner before, during, or after the wellness check on January 1, 2014. *Id.* ¶ 13. He denies using pepper spray against Wagner during the wellness check. *Id.* Further, Eagleson states he has no knowledge that any other correctional officer assaulted Mr. Wagner on January 1, 2014. *Id.* at 3.

The State Defendants have filed the NBCI daily log dated January 1, 2014. It shows that a wellness check was conducted on Wagner at 9:45 p.m. on that date, without incident. Wagner was taken to the WCI infirmary at the direction of Dr. Ottey. ECF 118-20.

In regard to the allegation that Eagleson solicited an inmate to harm Wagner, Eagleson attests, *id.* ¶ 17:

> I deny Mr. Wagner's allegation that on two occasions I solicited members of the Aryan Brotherhood to assault him. Mr. Wagner's allegations are ambiguous about when these incidents occurred, and the affidavit from Raymond Hurt is also ambiguous. More than 18 months have passed since these alleged incidents and no one has assaulted Mr. Wagner.

Sharon, a DPSCS employee since 2007 (ECF 118-13, ¶ 2), attests that Wagner's allegations of an assault on January 1, 2014, are false. *Id.* ¶ 4. Sharon assisted in the wellness check of Wagner on January 1, 2014. *Id.* ¶ 6. Sharon and Officer Eagleson were instructed to place handcuffs on Wagner, who was lying face down on the cell floor. *Id.* ¶¶ 7, 8. Sharon avers: "The removal of the nonresponsive Mr. Wagner for medical evaluation was handled quickly and without incident. *Id.* ¶ 9. Sharon also states that he and Officer Eagleson escorted Wagner to the infirmary, where he was examined by medical staff, and then to the property strip cage where Wagner was strip searched. *Id.* ¶ 11. Based on instructions from the medical staff (*id.* ¶ 10), Wagner was then escorted to the infirmary at WCI. *Id.* ¶ 12.

Sharon adds, *id.*:

13.     I did not make any threats against Mr. Wagner before, during or after the January 1, 2014 wellness check.   I did not apply any pepper spray to Mr. Wagner during the wellness check. I did not kick or punch Mr. Wagner.

14.     I did not assault Mr. Wagner on the escort to the infirmary.

15.     Officers Eagleson and I then escorted Mr. Wagner to the property strip cage where he was strip searched. Mr. Wagner's allegations that Officer Eagleson and I slammed his face into the cage are false.

16.     I have no knowledge that any other correctional officer assaulted Mr. Wagner in the manner alleged on January 1, 2014.

Preston, a DPSCS employee since 2007 (ECF 118-14, ¶ 2), denies he was present or participated in the wellness check or alleged assault of Wagner on January 1, 2014.  *Id.* ¶ 5. Preston also denies Wagner's allegation that Preston kicked him.  *Id.*

Forney, a DPSCS employee since 2004 (ECF 118-15, ¶ 2), denies Wagner's allegations regarding the assault on January 1, 2014.  *Id.* ¶ 4.  Forney states that, contrary to Wagner's Complaint, he was not present at the wellness check.  *Id.*¶ 7.  Forney did, however, assist Sgt. Gordon,  Officer Crites, and Officer Eagleson in escorting Wagner to the WCI infirmary.  *Id.* ¶ 8. He states:

9.     Mr. Wagner did not accuse me of assaulting him.   He alleges that Sgt. Gordon and Ofc. Crites assaulted him during the transfer to Western Correctional Institution. Ofc. Crites, Sgt. Gordon, and Ofc. Eagleson were involved in the transfer, but at no time did they assault Mr. Wagner.

Crites, a DPSCS employee since 2007 (ECF 118-16, ¶ 2), denies participating in an assault of Wagner on January 1, 2014, and claims he was not present at the wellness check of Wagner on January 1, 2014.  *Id.* ¶ 5.  He states, *id.*:  "Contrary to his allegations, I was not present and not involved in any manner.  I did not shoot him with pepper balls."  However, Crites does state that he escorted Wagner to the WCI infirmary with Sgt. Gordon, Sgt. Forney,

and Officer. Eagleson.   *Id.* ¶ 6.  But, Crites denies he punched Wagner in the eye.   *Id.*

Former Sgt. Justin Gordon denies Wagner's allegations that he told the nurse what to write in Wagner's medical report after incidents on December 31, 2013, and January 1, 2014, and attests he was not present at the infirmary.  ECF 118-17, ¶ 9.[29]  He avers, in part, *id.* ¶ 4:

> 4.      Mr. Wagner alleges that, after participating in assaulting him during the incidents on both dates, I escorted him to the infirmary for medical evaluation and instructed the nurse to write her report stating that he had no injuries.   These allegations are false.  I have never requested that medical personnel file a false report concerning the medical evaluation of an inmate.

Gordon attests to assisting in the wellness check of Wagner on January 1, 2014.  *Id.* ¶ 5. He claims that he stood by the cell with the pepper ball launcher while Officers Eagleson and Sharon handcuffed Wagner.  *Id.* ¶ 7.   Gordon alleges that Wagner was removed from the cell for medical evaluation quickly and without incident.  *Id.* ¶ 8.   Further, he declares:

> 9.      Officers Sharon and Eagleson escorted inmate Wagner to the infirmary where he was examined by medical staff. Mr. Wagner's allegations that I told the nurses what to write in the medical report are false, as I was not present in the infirmary.

> 10.      Officers Sharon and Eagleson then escorted Inmate Wagner to the property strip cage where he was strip searched. Mr. Wagner's allegations that I assisted 11. Officers Sharon and Eagleson in slamming his face into the cage are false, as I was not involved in escorting Mr. Wagner to the strip cage and searching him.

> 11.      After Mr. Wagner had been evaluated by the NBCI medical staff and searched, Sgt. Forney, CO II Eagleson and I escorted Mr. Wagner to the infirmary at Western Correctional Institution. During the transfer, I did not assault Mr. Wagner and I did not observe any other correctional officer assault Mr. Wagner in the manner alleged.

### B. Discussion

As reviewed in my earlier Memorandum Opinion, and incorporated here by reference, a

---

[29]    The Declaration is not clear as to whether Gordon denies he was present at the medical evaluations on December 31, 2013 and January 1, 2014, or only the medical evaluation on January 1, 2014. It is clear, however, that he denies directing Cortez what to write on Wagner's medical chart.

convicted inmate's claim of use of excessive physical force is examined in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. In a claim for excessive application of force, the question is whether the correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," or "in a good-faith effort to maintain or restore discipline." *Whitley v. Albers,* 475 U.S. 312, 320–21 (1986)\ (internal quotation marks omitted); *see also Hudson v. McMillan,* 503 U.S. 1, 6-7 (1992).

To determine whether prison officials acted maliciously and sadistically, a court should balance: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the responsible officials, and; 4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321. Against this background, I shall consider Wagner's claims that he was subjected to excessive force on December 13, 2013 and January 1, 2014.

### 1.   Claim of Excessive Force on December 13, 2013

As indicated above, Officer Shaffer was not on duty when the use of force is alleged to have occurred on December 13, 2013. ECF 118-9.  At the time of the incident, NBCI was on lockdown status and orders for front cuffing were generally overridden by security concerns. ECF 118-8 ¶5, 118-10 ¶5,118-11 ¶5.  The State Defendants describe as "minimal" the amount of force involved to gain Wagner's compliance after he resisted handcuffing and note that he was not injured. ECF 118-8 ¶6; ECF 118-10 ¶6; ECF 118-11 ¶6.  The correctional officers also deny slamming Wagner's head into concrete or witnessing any other correction officer do so.  Further, they deny Wagner was injured.  Notably, there is no medical record that Wagner was administered medical treatment for injury on that day.

Wagner submitted a seven-page letter to the Secretary of the DPSCS concerning alleged

incidents on December 31, 2013 and January 1, 2014, and an IID investigation ensued.  ECF 82 at 36-37; ECF 75, Ex 1 at 231-243.  It bears noting that in that letter Wagner did not raise concerns about a handcuffing incident on December 13, 2013.  Moreover, there is no record that Wagner shared his concerns about the incident of December 13, 2013, during his subsequent IID interview.  ECF 75, Ex. 1 at 212-213.  Further, the record shows Wagner refused to attend a sick call visit on December 13, 2013.  *Id.* at 0194.

Wagner does not dispute he resisted when an attempt was made to handcuff him.  The parties differ as to what happened next. Wagner's allegations of excessive force are contradicted by defendants' affidavits. Further, as noted, one of the defendants alleged to have participated in the assault, Officer Shaffer, was not on duty at the time of the incident.

Prison officials must balance interests of maintaining prison security with an inmate's rights to be free from cruel and unusual punishment.  When force is needed to keep order, correctional officers may have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. *See Hudson*, 503 U.S. at 6; *see also Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015) (analyzing an excessive force claim under the Fourth Amendment and stating: "In considering the reasonableness of an officer's actions, we must consider the facts at the moment that the challenged force was employed."); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

The court is mindful that, with respect to a motion for summary judgment, it cannot determine matters of credibility or resolve disputes of material fact.  However, the court should not permit factually unsupported claims to proceed to trial.  Here, the prison was in a lockdown status and the efforts to gain Wagner's compliance were minimal.  There is no record that

38

Wagner needed medical care or reported the matter to the Internal Investigation Division.

Viewing this claim in the light most favorable to Wagner, there are no genuine issues of material fact, and the State Defendants are entitled to summary judgment as to this claim.

## 2.   Claim of Excessive Force on January 1, 2014

The State Defendants' exhibits indicate that a team of officers entered Wagner's cell on January 1 2014, to check on him because he was face down on the cell floor, unresponsive, and a red substance was nearby. The NBCI daily log for January 1, 2014, shows that a wellness check was conducted on Wagner at 9:45 p.m., without incident.  ECF 118-20.  At 10:30 p.m. Wagner was taken to the WCI infirmary at the direction of Dr. Ottey. ECF 118-20.

As noted, Officer Christopher Preston denies he was present or participated in an assault against Wagner on January 1, 2014. Attending correctional staff describe the wellness check as quick and without incident.  Officers Eagleson and Sharon entered the cell, placed Wagner in handcuffs, and escorted him to the medical room, where he was examined by medical staff.  The State Defendants deny administering pepper spray to Wagner. They deny assaulting Wagner during the wellness check and later in the property strip cage.  Officer Gordon denies that he told medical personnel what to write in Wagner's medical report.   ECF 118-7 through 11-18.

Wagner's medical condition was evaluated by six different medical providers between January 1, 2014 and January 2, 2014. Wexford Ex A. at 0035-40 (Shell, Ottey, Myers, Adams, Espina, Cortez).  Their observations do not corroborate the brutal assault Wagner describes.  Nor is there any basis to conclude that these health care providers collaborated so as to falsify the medical records.   The medical records indicate that Wagner was responsive, talking, and complained his handcuffs were too tight and causing wrist pain.  No wounds were noted, he ambulated on his own, and his gait was steady. Eye redness and swelling were observed, as well

as a canker sore on the lower lip. These observations are inconsistent with the violent attack that Wagner claims occurred on January 1, 2014. Of note, too, an IID investigation of Wagner's claims, which included staff interviews and a records review, concluded the evidence did not corroborate Wagner's allegations. ECF 75, Ex. 1 at 388-390, 391-393, 399.

The State Defendants' exhibits demonstrate there is no genuine dispute of material fact. This Court has an affirmative obligation to prevent factually unsupported claims from proceeding to trial. Accordingly, I will grant summary judgment in favor of the State Defendants as to this claim.

### 3.   Claim Against Sergeant Gordon

Prison officials are entitled to rely on medical judgments and the expertise of prison physicians and other medical providers concerning the course of treatment deemed necessary for prisoners. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990).   By the same token, correction officials may be found deliberately indifferent by intentionally interfering with a prisoner's medical treatment.  *Miltier*, 896 F.2d at, 854–55. Wagner asserts Sgt. Gordon instructed Nurse Cortez on December 31, 2013, and a medical provider on January 1, 2014, not to document his actual injuries.

As discussed, Cortez and Gordon have executed affidavits categorically denying these allegations. Cortez attests the medical record accurately reflects her medical observations of Wagner's condition. Further, medical records completed by other medical providers on January 1 and January 2, 2014, provide no basis to support Wagner's claims of serious injury. Even when Wagner's allegations are viewed in the light most favorable to him, no genuine issue of material fact is at issue. Thus, summary judgment will be entered in favor of Sgt. Gordon as to this claim.

#### 4.   Claim against Officer Eagleson

Wagner claims Officer Eagleson solicited another inmate to harm Wagner.  Eagleson denies Wagner's allegations. Moreover, Wagner was not assaulted or harmed by any other inmate. ECF 118-12 at 3.  Thus, he cannot show harm as a result of the actions he alleges, and summary judgment in favor of Officer Eagleson is appropriate.

### III.   The Decontamination Shower

Genuine issues of material fact remain regarding Wagner's claims that he requested a decontamination shower on December 31, 2013 (ECF 134-3 ¶¶ 23, 24); he was denied a decontamination shower; and this denial constituted deliberate indifference to his serious medical need.

Wagner reported to the IIU investigator that he was denied a decontamination shower. ECF 75 Ex , 1 at 213.  This information conflicts with the Serious Incident Report filed on December 31, 2013, which indicated Wagner had refused a decontamination shower. Defendants' filings fail to address whether Wagner was offered a shower, whether a shower was deemed medically unnecessary given Wagner's condition and/or lack of complaints; whether he declined a shower; to whom he declined the shower; whether he had access to running water after his medical evaluation, so that he could wash; and who among the State Defendants was involved, if any.[30]  It is also unclear in the record whether offering a decontamination shower is routine procedure after use of force chemical agents, or medically necessary.  As such, the facts are insufficient for me to evaluate whether Cortez and the State Defendants "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on Wagner was sufficiently serious to amount to cruel and unusual punishment.

---

[30] Wagner faults Sgt. Gordon for ordering the water in his cell turned off so that he was unable to wash after exposure to pepper spray. ECF 16 at 12; ECF 132-1 at 11.

Accordingly, Cortez and the State Defendants shall be granted twenty-eight days to file additional briefing on this issue, and may submit additional verified exhibits, as may be appropriate.  Wagner will be granted twenty-eight days to reply thereafter. This briefing shall be limited to the decontamination shower issue.

## IV.  CONCLUSION

For the aforementioned reasons, the Medical Defendants' motion for summary judgment (ECF 105) IS GRANTED in part and DENIED in part.  In particular, the Medical Defendants' motion for summary judgment is granted except as to whether Wagner was denied a decontamination shower by Cortez after the use-of-force incident on December 31, 2013. The State Defendants' renewed motion for summary judgment (ECF 118) IS GRANTED in part and DENIED in part.  Specifically, it is granted as to all claims, except as to whether Wagner was denied a decontamination shower after the use-of-force incident on December 31, 2013.

Plaintiff's motion for partial summary judgment (ECF 134) IS DENIED, except as to the claim he was denied a decontamination shower on December 31, 2013.  As to that claim, a ruling is premature, and the claim shall be held in abeyance.

Defendants shall be granted twenty-eight days to submit additional briefing and verified exhibits, as may be appropriate.  Plaintiff may respond within twenty-eight days.

A separate Order follows.


March 8, 2016                                   _____/s/_____
Date                                           Ellen Lipton Hollander
                                               United States District Judge