**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JOHN ALEXANDER WAGNER, # 371-133    *

        *

Plaintiff,        *

        *

v        *      Civil Action No. ELH-14-791

        *

WARDEN, et al[1]      *

        *

Defendants.      *

        ***

**MEMORANDUM OPINION**

John Alexander Wagner, a self-represented Maryland prisoner incarcerated at North Branch Correctional Institution ("NBCI"), claims, *inter alia*, that his Eighth Amendment rights were violated when he requested and was denied a decontamination shower after he was exposed to pepper spray in a use-of-force incident on December 31, 2013.

This Court has previously issued several opinions and orders as to multiple claims filed by Wagner against about 50 defendants.[2] *See*, *e.g.*, ECF 82; ECF 83 (Memorandum Opinion and Order of March 19, 2015); ECF 139; ECF 140 (Memorandum Opinion and Order of March 8, 2016). In those opinions, I referred to Wexford Health Sources, Inc. and various individual health care providers as the "Medical Defendants." And, I referred to the Warden and NBCI correctional officers as the "State Defendants." Where appropriate, I shall use the same references here.

---

[1] The case appears on the docket as *Wagner v. Beachy*. However, Beachy is no longer a party to the case.

[2] For reasons previously addressed, it was difficult to determine precisely the number of individuals who were sued. ECF 82 at 1 n. 1.

In a prior ruling, I granted summary judgment in favor of the Medical Defendants, except as to Wagner's claim that he was denied a decontamination shower by Nurse Kristi Cortez after a use-of-force incident on December 31, 2013.   ECF 140; *see also* ECF 83.   And, I granted summary judgment to the State Defendants, except as to the claim that Wagner was denied a decontamination shower following the incident on December 31, 2013.  *See* ECF 140; *see also* ECF 83.   Conversely, I denied Wagner's motion for partial summary judgment (ECF 134), except as to the decontamination claim.  *Id.*

Now pending are motions for summary judgment filed by the Medical Defendants (ECF 105) and the State Defendants (ECF 118),[3] as supplemented by ECF 145 and ECF 147. Wagner's responses are at ECF 149 and ECF 150.  Wagner's cross-motion for partial summary judgment (ECF 134) and his motion for appointment of counsel (ECF 148) are also under review.

No hearing is necessary to resolve the motions.  Local Rule 105.6.  For the reasons stated below**,** summary judgment will be granted in favor of all State Defendants, except for the claims that defendant Justin Gordon and Robert Cross in their personal capacities, denied Wagner's request for a decontamination shower and/or turned off the water in his cell.   The Medical Defendants' motion for summary judgment (ECF 105) shall be granted. Wagner's motion for partial summary judgment will be denied as to all State Defendants and all Medical Defendants, except for the claims that Defendant Gordon, in his personal capacity, denied Wagner a

---

[3] Counsel for the State Defendants correctly notes that, pursuant to my orders of May 19, 2015 (ECF 83) and March 8, 2016 (ECF 140), most of the State Defendants have been dismissed. *See* ECF 147 n. 2.  Counsel points out that the facts "relating to the decontamination shower appear to involve" State Defendants Justin Gordon, Jeremy Crites, Robert L. Cross, and Thomas Sires, and that Wagner does not raise specific allegations against either Cross or Sires. On this basis, counsel states that his supplemental briefing does not include Cross or Sires. ECF 147 at 1.  Nevertheless, they have not yet been dismissed from the case.

decontamination shower and turned off the water in his cell.  Wagner's motion for appointment of counsel (ECF 148) will be granted.

# I. BACKGROUND

The procedural history and facts are detailed in my prior opinions.  *See* ECF 9, ECF 36, ECF 82, ECF 139, ECF 142. Therefore, I shall incorporate here by reference the procedural history and factual summaries as outlined earlier.  The history and facts of this case are repeated as necessary to provide context and to resolve the motions.

## A.  Procedural History

Wagner initiated this action on March 13, 2014, by filing a civil rights complaint under 42 U.S.C. § 1983.  Subsequently, he filed multiple submissions and motions, adding numerous additional defendants and claims.  In all, Wagner sued approximately 50 defendants, and his submissions included claims of inadequate medical care, denial of medical care, use of excessive force, unlawful limitations on his right to file grievances, unconstitutional conditions of confinement, and denial of due process at a disciplinary hearing.  ECF 82.

Counsel for the Medical Defendants filed a motion to dismiss the complaint (ECF 44), to which Wagner filed an opposition. ECF 49. The Medical Defendants filed a reply. ECF 50. Counsel for the State Defendants filed a motion to dismiss or, in the alternative, for summary judgment.  ECF 75.  Wagner did not respond, but he had been notified of the motion and the potential consequences of failure to respond.  *See* ECF 76.

On March 19, 2015, I granted in part and denied in part the Medical Defendants' Motion to Dismiss. In particular, I granted the motion to dismiss as to Tiffany Bennett; Janice Gilmore; and William Beeman.  And, I denied the motion, without prejudice to the right to renew it, as to the remaining Medical Defendants: Wexford Health Sources, Inc., Colin Ottey, M.D.; Nurse

3

Kristi Cortex; and Nurse Autumn Durst. ECF 83.   In the same Order, I granted the State Defendants' motion for summary judgment in part and denied it in part. In regard to the excessive force claims against the State Defendants, I granted summary judgment in favor of the State Defendants as to Wagner's claims arising from incidents on October 31, 2013, and December 31, 2013.  ECF 83; *see* ECF 82 at 59-62.[4]  But, I denied summary judgment, without prejudice, as to claims based on incidents that occurred on December 13, 2013, and January 1, 2014.  ECF 83.  As to Wagner's claim that Sgt. Justin Gordon interfered with Wagner's medical treatment by directing the falsification of Wagner's medical records after a cell extraction on December 31, 2013, I denied summary judgment, subject to the right to renew. ECF 83.  And, I denied summary judgment, subject to the right to renew, as to Wagner's claim that Officer Eagleson solicited an inmate to harm Wagner. *Id*.  I granted summary judgment in favor of the State Defendants as to all remaining claims. *Id*.

Wagner then filed a notice of interlocutory appeal.  ECF 86, ECF 91. On June 23, 2015, the United States Court of Appeals for the Fourth Circuit dismissed Wagner's appeal as premature.  ECF 100.  The mandate issued on July 15, 2015.  ECF 101.

Defendants subsequently filed renewed dispositive motions, supported by memoranda and exhibits. ECF 105 (Medical Defendants Wexford, Cortez, and Durst); ECF 118 (remaining State Defendants).  Wagner filed an opposition to the motions (ECF 132), supported by many exhibits, including two personal declarations (ECF 132-2, ECF 132-3) as well as lengthy exhibits filed in paper form, which do not appear on the electronic docket.   In addition, Wagner filed a cross-motion for partial summary judgment.   ECF 134.   The Medical Defendants filed an opposition to Wagner's cross-motion (ECF 136), to which Wagner filed a reply.  ECF 137.  In

---

[4] Pagination citations refer to the electronic docket.

his reply, Wagner asserted that he was moving for partial summary judgment as to defendant Cortez, alleging, *inter alia*, that she failed to provide him with a decontamination shower on December 31, 2013.  Cortez filed a surreply. ECF 138-1.

On March 8, 2016, I granted in part and denied in part the motions for summary judgment filed by the Medical Defendants and the State Defendants.  In particular, I denied the motions as to Wagner's claim that he was denied a decontamination shower after exposure to pepper spray during the use-of-force incident on December 31, 2013. ECF 105, 118, 139, 140. Similarly, I denied Wagner's motion for partial summary judgment (ECF 134), except for the decontamination shower claim. I determined that ruling on that claim was premature and held the matter in abeyance pending further briefing. ECF 140.  In particular, I ordered Medical Defendant Kristi Cortez, and the State Defendants to file additional briefing and exhibits to address the claim.  ECF 140.  I granted Wagner thirty days to reply to the supplemental briefings. *Id*.  Wagner did not file a reply.

Wagner filed a Motion to Alter or Amend Judgment on March 21, 2016.  ECF 141.  I denied that motion on March 24, 2016.  ECF 142; ECF 143.

Cortez filed her court-ordered supplemental briefing on April 5, 2016 (ECF 145), with two affidavits.  ECF 145-1; ECF 145-2.  On April 12, 2016, the State Defendants filed their court-ordered supplemental briefing (ECF 147), with exhibits and three declarations. ECF 147-1 to ECF 147-5.

On June 8, 2019, Wagner filed a motion to appoint counsel.  ECF 149.   He also filed a Declaration concerning his need for discovery. ECF 149-1.

B.   **Factual History**

On December 31, 2013, correctional officers used pepper spray to obtain Wagner's compliance during a cell extraction.   During the incident, Wagner threw a liquid substance, which smelled strongly of feces, and it hit five correctional staff members, including Gordon and Crites. ECF 75, Ex. 1 at 257. [5]   After pepper spray was deployed, Wagner quieted, was placed in restraints, and was escorted to the medical office for examination.   There Nurse Kristi Cortez examined him. Wagner was then strip searched by correctional officers and placed in a temporary cell with suicide precautions.   *Id.* at 252; ECF 75, Ex. 1 at 189 (placement on staff alert for twenty-four hours as a security precaution).

Wagner claims he was "maliciously refused" a decontamination shower to flush his eyes after he was exposed to pepper spray.   ECF 137 at 1.   The Serious Incident Report and Investigator's Summary, written by Lt. Robert Cross on the date of the incident, stated that Wagner was offered a decontamination shower, but he refused it.   *See* ECF 6-1 at 5, 8; ECF 75, Ex. 1 at 250-252, 254, 255.   Sgt. Justin Gordon's Use of Force Report, written on December 31, 2013, also states that Wagner was offered but refused a decontamination shower. *Id.* at 257, 259; ECF 147-2 at 16.   Gordon's report provides, in part:

> Lieutenants Cross and Sires escorted Inmate Wagner to the Housing Unit # 1 Medical Room.   Lieutenant Cross interviewed Inmate Wagner.   Inmate Wagner refused to provide a written statement.   However, Inmate Wagner stated, "I'm at peace with the Lord.   I'm ready to die."   Nurse Kristi Cortez evaluated Inmate Wagner and treated him for pepper spray exposure.
>
> **************
> Inmate Wagner was offered a decontamination shower and he refused.   Sergeant Gordon and Officer Crites escorted Inmate Wagner to Temporary Housing Cell 1-C-3. Inmate Wagner was secured in the cell without further incident.

---

[5]   Exhibits 1 and 2 for ECF 75 are in paper format and inaccessible through the courts electronic docket.

ECF 75, Ex. 1 at 257; *see also* ECF 147-2 at 5.   Wagner refused to provide a written statement after the incident. ECF 75, Ex. 1 at 271; ECF 147-2 at 16.

Wagner's statement to the Internal Investigation Unit ("IIU") investigator on September 24, 2014, provides a different account.   Wagner told the investigator that he was denied a decontamination shower. ECF 75, Ex. 1 at 213.   Additionally, in a Declaration filed in this court (ECF 105), Wagner claimed that on December 31, 2013, Gordon and Cortez denied him a decontamination shower for pepper spray exposure.   ECF 132-1 at 11; ECF 132-2 at 1, ¶5. Wagner claims in his motion for partial summary judgment that he asked for a "quick shower because he was burning and could not breath[e]." ECF 134-3 at 3, ¶22.   Wagner avers: "Defendant refused Plaintiff a decontamination shower and prevented [Nurse Kristi] Cortez from treating him." *Id.* at 3, ¶ 23.   However, Wagner does not identify the "defendant" by name. Wagner also claims he suffered burning to his skin "for days."  ECF 134-1 at 2.

Wagner claims that, after leaving the medical unit, he was placed in a contingency cell without a working sink or toilet. *Id.* at 3, ¶24.  He contends that the water in the cell was turned off at Sgt. Gordon's direction.  ECF 132-1 at 11; ECF 16 at 12.  According to Wagner, denial of a decontamination shower violates Division of Correction Directive ("DCD") 110-23, which requires "medical treatment shall be given to all persons exposed to chemical agents." ECF 134-3, Attachments, Exhibit 9 at 8. [6]

The DPSCS Use of Force Manual and DCD 110-23 state that medical treatment must be provided after exposure to chemical agents after a use of force incident. ECF 139 at 8; *see also* ECF 134-3 (DPSCS Use of Force Manual), Ex. 8 at 18-19, 21; Ex 9 at 8 (DCD-11-23). Contrary

---

[6]   The attachment is in paper format and  inaccessible through the court's electronic docket.

to Wagner's assertions, however, the manual and directive do not specifically require a decontamination shower. *Id*.

In light of the above, I concluded, *inter alia*, that there were genuine disputes of material fact as to the request for a decontamination shower. ECF 139 at 41. I could not determine from the record whether Cortez and the State Defendants acted with a sufficiently culpable state of mind and whether the deprivation or injury was sufficiently serious to amount to cruel and unusual punishment in regard to Wagner's decontamination shower allegations. *Id.* I also determined that additional briefing was necessary to clarify the record with respect to whether Wagner was offered a shower; whether the shower was medically necessary, given Wagner's condition and/or lack of complaints; whether Wagner declined a shower and, if so, to whom he declined the shower; whether Wagner had access to running water to wash after his medical evaluation; and who among the State Defendants was involved. *Id*. at 41-42.

## II.  SUPPLEMENTAL SUBMISSIONS

### A.  State Defendants

With their supplemental briefing, the State Defendants have filed declarations executed by Justin Gordon, Jeremey Crites, Robert Cross, and Warden Frank Bishop, Jr. *See* ECF 147-1; ECF 147-3; ECF 147-4; ECF 147-5. They also provided lengthy verified exhibits. ECF 147-2. In addition, they argue that photographs of Wagner taken after he was medically evaluated and strip searched do not show that he was injured on December 31, 2013, other than a slight abrasion to his lip, and he was not in distress. ECF 147-2 at 19-27.  The declarations are summarized below.

### 1.   Declaration of Justin Gordon

At the relevant time, Gordon was a Sergeant at NBCI.  Gordon Decl., ECF 147-1, ¶ 2. He was the ranking officer during the cell extraction on December 31, 2013.  *Id.* ¶ 5.[7]  He reviewed the following reports of December 31, 2013, to refresh his recollection of the incident: 1) Information Report written by Lt. Robert Cross; 2) Information Report written by Lt. T.L. Sires; 3) Use of Force Report written by Sgt. Justin Gordon; 4) the Use of Force Report Written by Lt. Robert Cross;[8] and 5) the Investigator's Summary written by Lt. Robert Cross.  *Id.* ¶ 4; *see also* ECF 147-2.[9]  Gordon attests that the reports are accurate, with one exception.  However, Gordon does not identify the report or statement to which he takes exception.

According to Gordon, after the cell extraction, Lt. Cross and Lt. Sires assumed control of the incident and escorted Wagner to the medical room.  ECF 147-1, ¶¶ 5, 6.  Gordon and Officer Crites waited in the hallway outside the medical room.  Lt. Cross was in the medical room with Wagner during the evaluation. *Id.* ¶ 7.[10]  After Wagner's medical examination, Cross briefly interviewed Wagner.  Cross then assigned Officers Crites and Gordon to escort Wagner for a strip search and placement in a temporary cell.

Of import here, Gordon attests: "It is protocol to offer a shower to an inmate after use of pepper spray. ***I recall Lt. Cross offered a shower to Mr. Wagner and that he refused.***"  ECF

---

[7]  Gordon is presently employed by the Cumberland, Maryland Police Department.  ECF 147-1.

[8]  This report appears to be written by Officer Crites for review by Lt. Cross.  Neither Crites nor Cross signed the report.  ECF 147-2 at 6-7.  Signed reports were previously filed and are included in the IIU investigation report. ECF 75, Ex. 1 at 264.

[9] This report is unsigned. ECF 147-2 at 11-12.  A signed copy was filed with the IIU report.  ECF 75, Ex. 1 at  255.

[10]  The State Defendants have not submitted an affidavit from Lt. Sires.  It is unclear where Sires was during Wagner's medical evaluation.

147-1, ¶9 (emphasis supplied). After the strip search, Officers Crites and Gordon escorted Wagner to the temporary cell. Gordon avers: "As noted in our reports, Officer Crites and I offered a shower to Mr. Wagner and he refused." *Id.* at ¶10; *see also* ECF 147-2 at 5.[11]

Gordon does not recall whether any officer turned off the water to Wagner's cell. ECF 147-1, ¶ 11. But, he acknowledges that, in some use of force instances, water is temporarily turned off in a cell because inmates sometimes block the drain to flood the tier, in protest. *Id.* ¶ 12.[12] Further, he acknowledges that it is "possible" that a tier officer temporarily did so. *Id.* ¶ 13. However, he explains that he and Crites were "escort officers," not tier officers. *Id.*

### 2. Declaration of Robert Cross

Cross is a Lieutenant at NBCI, and he was the "commanding officer" with respect to the incident. Cross Decl., ECF 147-4, ¶¶ 2, 7. He refreshed his recollection by reviewing Information Reports written by Lt. Robert and Lt T.L. Sires; Use of Force Reports written by Sgt. Justin Gordon, Lt. Cross, and Correctional Officer Jeremy Crites; and the Serious Incident and Investigator's Summary also written by Lt. Cross. ECF 147-4, ¶ 4. Cross generally recalls Wagner's cell extraction on December 31, 2013, and states the reports seem accurate. *Id.* ¶ 5. Although he is unable to form specific recollections regarding the incident, he states that he has

---

[11] As discussed, *infra*, Officer Crites has no recollection of whether Wagner was offered and declined a decontamination shower or whether the water in the temporary cell was turned off. ECF 147-3, ¶¶ 6, 7.

[12] This is Gordon's second Declaration. His first Declaration, which was not signed, was filed in support of the State Defendants' earlier dispositive motion. ECF 118; ECF 118-17. But, it did not address the decontamination issue, although it touched on Wagner's escort to the medical room after the use of force. He stated, in part, ECF 118-17, ¶ 4:

> Mr. Wagner alleges that, after participating in assaulting him during the incidents on both dates [December 31, 2013 and January 1, 2014], I escorted him to the infirmary for medical evaluation and instructed the nurse to write her report stating that he had no injuries. These allegations are false. I have never requested that medical personnel file a false report concerning the medical evaluation of an inmate.

no reason to question the accuracy of the reports, some of which he wrote, which state Wagner was offered and declined a shower.  *Id.*  ¶¶ 6, 8.

Cross attests that he has a more specific recollection of the cell extraction and the escort to the medical department, but he has no "specific recollection of what occurred in the medical department, including whether Wagner was offered a shower and whether he declined a shower." *Id.* ¶ 6.  Cross notes institutional protocol is to offer an inmate a shower after the use of pepper spray.  *Id.* ¶ 7.  As commanding officer with respect to the incident, it was his role to offer Wagner a shower, as Cross has "done for other inmates in the same circumstance."  *Id.*  He has "no reason to question the accuracy of the reports that state that Mr. Wagner was offered a show and declined it."  *Id.* ¶ 8.  Cross was not present at Wagner's cell at the time Wagner alleges that "someone turned off the water. *Id*. ¶10.

### 3.   Declaration of Jeremy Crites

Crites is a Sergeant at NBCI.  ECF 147-3, ¶ 2.  He refreshed his recollection by reviewing Information Reports written by  Lt. Robert and Lt T.L. Sires; Use of Force Reports written by Sgt. Justin Gordon, Lt. Cross, and Correctional Officer Jeremy Crites; and the Serious Incident and Investigator's Summary also written by Lt. Cross.  *Id.* ¶ 4.  Crites has no specific recollection as to whether Wagner was offered and declined a decontamination shower or whether the water in his temporary cell was turned off.  ECF  147-3, ¶¶ 6, 7.   Crites states he has no reason to question the accuracy of the incident reports that state Wagner was offered and declined a shower.  *Id.* ¶ 6.  Moreover, institutional protocol provides for offering an inmate a shower after the use of pepper spray.  *Id.*

### 4.  Declaration of Frank Bishop, Jr.

Frank Bishop, Jr. is the Warden of NBCI.  ECF 147-5, ¶ 2.  He became the Warden in February 2014.  *Id.*  He attests that "[t]here is no requirement for a 'decontamination shower' after exposure to pepper spray."  *Id.* ¶ 5.  According to Bishop, the *Use of Force Manual* provides, *id.*:

> All use of force incidents require a medical examination unless the inmate refuses.  With any exposure to pepper spray the standard protocol is to wash with copious amounts of water, which is done by the medical provider during examination.  A "decontamination shower" is routinely offered following the medical treatment as a matter of practice and documented accordingly.

Relying on his review of various reports, Bishop asserts that, "in accordance with protocol," Gordon and/or Cross offered Wagner a decontamination shower after his medical examination, but Wagner refused.  *Id.* ¶ 7.  Moreover, Bishop claims each cell has a sink that an inmate can utilize.  *Id.* ¶ 8.

### B.  Medical Defendant Kristi Cortez

#### 1.  Affidavit of Kristi  Cortez

Kristi Cortez, R.N., provided an Affidavit.  ECF 145-1.  She avers that when an NBCI inmate is escorted for a medical evaluation after the use of force with pepper spray, the nurse performs a complete assessment, including a respiratory assessment to identify any acute injuries that require evaluation by a physician or immediate medical intervention.  ECF 145-1, ¶ 3.  Further, she avers, *id.* ¶¶ 4-5:

> 4.      Once an inmate patient has been medically cleared following pepper spray exposure, it is the practice and custom at NBCI to provide the inmate the opportunity to shower.  Completion of this decontamination shower is not performed by medical staff.  Rather, the decontamination shower is performed by correctional staff in correctional shower facilities while the inmate is under the custody and control of correctional officers.  Since I began providing medical care as a registered nurse to inmate patients incarcerated at NBCI, I have never been involved in the actual administration

of a decontamination shower to an inmate after the inmate has been exposed to pepper spray.

> 5.     As a Registered Nurse at NBCI, I provided medical treatment to John Wagner, #371-133, on December 31, 2013, for exposure to pepper spray. At no time during the visit did I advise or instruct correctional staff or anyone else that Mr. Wagner should be denied a decontamination shower.  At the conclusion of the visit, Mr. Wagner was released to correctional staff.  I was not present for or involved in the encounter that resulted in Mr. Wagner allegedly not receiving a decontamination shower.

**6.  Affidavit of Colin Ottey, M.D.**

Dr. Ottey is the medical director at NBCI.   ECF 145-2.  He states that a medical evaluation for use of force with pepper spray exposure is a common presentation in correctional settings.  *Id.* ¶ 4.  When an inmate is exposed to pepper spray, nursing staff perform "a complete head to toe assessment" to identify "any acute medical injuries which require further evaluation by a physician and or immediate medical intervention." *Id.*  Ottey states, *id.* ¶¶ 5-6:

> 5.     The agent used in pepper spray is derived from hot cayenne peppers and is designed to be an inflammatory irritant when contact occurs with the skin, eyes, nasal passages, and mouth.   Generally, no lasting physical damage occurs when someone receives a dose of pepper spray and symptoms usually begin to remedy themselves in about 15 minutes to 45 minutes. However, in a small number of individuals exposure can trigger respiratory distress and\or respiratory failure.    Accordingly, because of the possible seriousness of this condition a respiratory assessment is completed.

> 6.     Typically, removing the clothes worn when the pepper spray was applied and rinsing the areas of the body with water that have come into contact with the spray provides adequate decontamination. Therefore, it is the practice and custom, once an inmate patient has been medically cleared following pepper spray exposure, to provide the inmate the opportunity to shower.   Completion of this decontamination is not performed by medical staff.    Rather, the decontamination shower is performed by DPSCS [Department of Public Safety and Correctional Services] correctional officers.

## III. STANDARD OF REVIEW

I incorporate here the standard of review for summary judgment outlined in my earlier Memorandum Opinion.  ECF 82 at 24-29.  However, I wish to underscore that the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate.  This is because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

## IV.  DISCUSSION

### A.  The State Defendants

The State Defendants move for summary judgment in their favor and assert Eleventh Amendment[13] and qualified immunity[14] as affirmative defenses.

---

[13]  I have already ruled that Wagner's claims against the State Defendants in their official capacities are barred by Eleventh Amendment immunity. ECF 82 at 51-53.

[14]  When considering whether a defendant is entitled to qualified immunity a court must consider whether, at the time of the claimed violation, this right was clearly established and "whether a reasonable person in the official's position would have known that his conduct would violate that right." *Rish v. Johnson*, 131 F.3d 1092, 1095 (4th Cir. 1997) (citations omitted). Recently, the United States Court of Appeals for the Fourth Circuit noted, but did not rule, on the "special problem" of "applying an objective qualified immunity standard in the context of an Eighth Amendment claim that is satisfied only by a showing of deliberate indifference. *See Scinto v. Stansberry*, __F.3d. __, 2016 WL6543368, at *11 n. 9 (November 4, 2016) ("…we note once again the 'special problem' of " 'applying an objective qualified immunity standard in the context of an Eighth Amendment claim that is satisfied only by a showing of deliberate indifference'—that is, a knowing violation of the law." *Id*. (citations omitted).

Wagner has remained steadfast in his claim that he requested and was denied a decontamination shower or access to water to wash off the pepper spray. For their part, the State Defendants assert that the incident reports, written contemporaneously with the incident, are accurate. Wagner's pepper-spray stained clothes were removed in the medical room (makeshift body armor was cut off with shears) and during the subsequent strip search. ECF 75, Ex. 1 at 259. In the view of the State Defendants, the record shows Wagner was medically evaluated after exposure to pepper spray, and was then twice offered and twice refused a decontamination shower. ECF 75, Ex. 1 at 272-274; ECF 147-2 at 26-28.

### 1.   The Eighth Amendment

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, ____ F. 3d ____, 2016 WL 6543368, at *1 (4th Cir. Nov. 4, 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. at 106; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and, subjectively, that the prison staff was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was made available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.  Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.*; *see also Scinto*, *supra*, at *2.  As the Court explained in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999): "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences. . . .  To lower this threshold would thrust federal courts into the daily practices of local police departments."

As noted, objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Scinto*, 2016 WL 6543368 at *1.  A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 2016 WL 6543368, at *1.  Proof of an objectively serious medical condition, however, is not enough.

The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 298 (1991); *see Farmer*, 511 U.S. at 839-40; *Scinto*, *supra*, at *2.  As the *King* Court recently reiterated, 825 F.3d at 219: "The requisite state of mind is . . . 'one of deliberate indifference to inmate health or safety.'" (citation omitted).  Although this "'entails more than mere negligence . . . it is satisfied by

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835).

Put another way, "[t]o show an Eighth Amendment violation, it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178.   In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).   The Fourth Circuit has explained:  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   The Court has also said:  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer* 511 U.S. at 844). However, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Id.*

A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).  In *Scinto*, *supra*, at *2, the Fourth Circuit said:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to

information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. However, even officials who acted with deliberate indifference may be "free from liability if they responded reasonably to the risk." *Farmer*, 511 U.S. at 844.

Even if the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000 (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)). Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Notably, a prisoner's disagreement with medical care generally does not establish an Eighth Amendment violation, absent exceptional circumstances. *Scinto*, *supra*, at *2; *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at *2-3 (D. Md. June 4, 2012) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *see Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Nor does the Eighth Amendment does not require that a prisoner receive medical care from a provider of his choice. Rather, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). Moreover, "any negligence or malpractice on the part of … doctors in

missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F. 3d 164, 166 (4th Cir. 1998).

I previously ruled that, under the circumstances here, the initial application of pepper spray on December 31, 2013, passed constitutional muster.  ECF 82 at 60-61; ECF 83.  That does not end the inquiry, however.  Wagner claims he was denied the opportunity to wash off the pepper spray by way of a shower or at a sink.  If the pepper spray were allowed to persist after the need for it had expired, then there would be a colorable Eighth Amendment claim for infliction of harm to plaintiff without adequate justification.

Courts have also concluded that the Eighth Amendment can be violated when, after a prisoner is subjected to pepper spray, even for a legitimate reason, officers then withhold appropriate medical attention.  *See, e.g., Walker v. Bowersox*, 526 F.3d. 1186, 1189 (8th Cir. 2008) (finding Eighth Amendment violation where prisoner was barred from showering or changing for three days after pepper spray incident); *Norton v. City of Marietta*, 432 F.3d 1145, 1153-54 (10th Cir. 2005) (finding triable Eighth Amendment claim where officer pepper sprayed inmate's eyes for 5-7 seconds from two inches away, as if "'he was spray-painting [plaintiff's] face,'" and then ignored inmate's pleas for assistance, other than "toss[ing] some water in his eyes"); *Foulk v. Charrier*, 262 F.3d 687, 692, 701-02 (8th Cir. 2001) (affirming Eighth Amendment verdict against officer where, after officer "sprayed pepper spray directly into [inmate's] face," inmate "received no medical care and had no ability to wash off the pepper spray, [and] continued to feel its painful effects for several days").

## 2.  Qualified Immunity

The State Defendants maintain that, even assuming, *arguendo*, that Wagner was denied an opportunity to decontaminate, they are protected by qualified immunity.

"Qualified immunity shields government officials who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015) (internal quotations omitted); *see also Scinto*, 2016 WL 6543368, at *10.  In *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 395 (4th Cir. 2014), *cert. denied sub nom. Baltimore City Police Dep't v. Owens*, —— U.S. ——, 135 S. Ct. 1983 (2015), the Court reiterated: "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Saucier v. Katz*, 533 U.S. 194, 206 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009); *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013); *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013); *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir.), *cert. denied*, —— U.S. —, 133 S. Ct. 789 (2012).  Thus, "a government official who is sued in his individual capacity may invoke qualified immunity." *Bland*, 730 F.3d at 391; *see Harlow,* 457 U.S. at 818.[15]

Notably, qualified immunity is an "'*immunity from suit* rather than a mere defense to liability' . . . ." *Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in *Mitchell*).   Accordingly, the immunity is

---

[15] The defense of qualified immunity does not apply to claims for injunctive relief.  *See Pearson v. Callahan, supra*, 555 U.S. at 242-43 (affirming that defendants may not seek qualified immunity "in cases in which that defense is not available, such as … § 1983 cases against individuals where injunctive relief is sought instead of or in addition to damages"); *Lefemine v. Wideman*, 672 F.3d 292, 303-04 (4th Cir.) ("Claims for declaratory and injunctive relief are not affected by qualified immunity."), *rev'd on other grounds*, —— U.S. ——, 133 S. Ct. 9 (2012); *accord Vollette v. Watson*, 937 F. Supp. 2d 706, 720 (E.D. Va. 2013).

"'effectively lost if a case is erroneously permitted to go to trial.'"   *Ussery*, 786 F.3d at 337 (quoting *Mitchell*, 472 U.S. at 526).

As the Supreme Court has explained, "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. at 231.   "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)); *accord Stanton v. Sims*, ____ U.S. ____, 134 S. Ct. 3, at *5 (2013) (per cuiram).  Moreover, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson,* 555 U.S. at 231.

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow,* 457 U.S. at 818, and so an officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity.  The doctrine protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Purnell*, 652 F.3d at 531); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).  In other words, qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, ⎯⎯ U.S. ⎯⎯, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  However, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of his discretionary authority is

not entitled to claim qualified immunity,' the defendant bears the initial burden 'of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties.'" *Henry v. Purnell*, 501 F.3d 374, 377 n.2 (4th Cir. 2007) (en banc), *cert. denied*, ⸻ U.S. ⸻, 132 S. Ct. 781 (2011) (citation omitted); *see also, e.g., Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004).

In *Scinto*, *supra*, at *10, the Fourth Circuit explained:  "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question."  (Citations omitted.)  Thus, the qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right," *Saucier*, *supra*, 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'"  *Merchant*, *supra*, 677 F.3d at 662 (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)); *see Owens*, *supra*, 767 F.3d at 395-96.  The "two inquiries . . . may be assessed in either sequence."  *Merchant*, 677 F.3d at 661-62; *accord Pearson*, 555 U.S. at 236 (stating that judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Messerschmidt v. Millender*, ⸻ U.S. ⸻, 132 S. Ct. 1235, 1245 (2012) (citing *Creighton*, 483 U.S. at 639).  If

the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818.  On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818-19.

To determine whether the right was clearly established, the court first must define the right at issue.  *Scinto*, *supra*, at *10; *Occupy Columbia*, 738 F.3d at 118.  "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'"  *Carroll v. Carman*, —— U.S. ——, 135 S. Ct. 348, 350 (2014) (quoting *Creighton,* 483 U.S. at 640).  "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Carroll*, 135 S. Ct. at 350 (quoting *al-Kidd*, 563 U.S. at 741); *see City & Cnty. of San Francisco, Calif. v. Sheehan*, —— U.S. ——, 135 S. Ct. 1765, 1774 (2015); *Plumhoff v. Rickard*, 572 U.S. ____, 134 S. at 2012, 2023 (2014); *see also Reichle v. Howards*, —— U.S. ——, 132 S. Ct. 2088, 2093 (2012) ("To be clearly established, a right must be sufficiently clear that 'every reasonable official would [have understood] that what he is doing violates that right'")  (citation and some quotation marks omitted).

In determining whether a right was clearly established, courts in this Circuit "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of the state in which the case arose,'" as of the date of the conduct at issue.  *Doe ex rel. Johnson v. S.C. Dept. of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir.) (citations omitted), *cert. denied*, 562 U.S. 890 (2010).  Notably, "a right may be clearly established by any number of

sources, including a criminal case, a statute, or the Constitution itself." *Owens*, *supra*, 767 F.3d at 399. However, there need not be a case "directly on point . . . ." *al-Kidd*, 563 U.S. at 741.

The question is "whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *See Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015). To defeat qualified immunity, "'the existing authority must be such that the unlawfulness of the conduct is manifest.'" *Merchant*, 677 F.3d at 665 (quoting *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998)); *see Bland*, *supra*, 730 F.3d at 391 (stating that "[f]or a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right") (internal quotations omitted).

In my view, the cases I cited earlier, in the context of the Eighth Amendment, clearly establish that the Eighth Amendment may be violated if, following exposure to pepper spray, a prison inmate is not provided with the opportunity to shower or wash off the offending substance, at least when it is safe to do so. *See Bowersox*, 526 F.3d at 1189; *Norton*, 432 F.3d at 1153-54; *Charrier*, 262 F.3d at 701-02. Therefore, qualified immunity does not apply here.

### 3.   Analysis

Wagner claims that on December 31, 2013, Gordon and Cortez deprived him of a decontamination shower for pepper spray exposure. ECF 132-1 at 11; ECF 132-2 at 1 ¶5; 134-2 at 6 ¶¶ 45-47. He maintains that he asked for a "quick shower because he was burning and could not breath[e]." ECF 134-3 at 3 ¶22. Wagner also contends that "defendant" refused to provide him with a decontamination shower and prevented Cortez from treating him. *Id.* at 3, ¶ 23. Wagner also claims there was "no working sink" in the isolation cell. *Id.* ¶ 24. He faults Gordon

for directing that the water in the cell be turned off.  ECF 132-1 at 11; ECF 16 at 12.  Wagner claims he suffered burning to his skin "for days."  ECF 134-1 at 2.

Sgt. Gordon is the sole declarant with specific recollection of facts relating to whether Wagner was offered a decontamination shower.  He claims that he was outside the medical room when he heard Cross ask Wagner whether he wanted a shower and that Wagner refused. However, Gordon does not explain how he knew the verbal exchange he overheard was between Cross and Wagner.  Gordon also attests that he and Crites, as noted in their reports, offered Wagner a shower before placing Wagner him in the temporary cell.  And, Gordon states that before he placed Wagner in his cell, he offered him a decontamination shower and again Wagner declined. Gordon states he has no specific recollection whether any officer turned off the water in plaintiff's cell.

Officer Crites, who was standing with Gordon outside the medical room and assisted in escorting Wagner to the temporary cell, does not recall specific facts regarding the shower. Notably, Wagner does not fault Crites in connection with the lack of a shower, although he is critical of him as to other events.

Lt. Cross has no specific recollection of the facts.  But, significantly, he attests that it was his responsibility to offer Wagner a shower after exposure to pepper spray.  Although he said that it is his usual practice to offer a decontamination shower to inmates in these circumstances, he has no specific recollection as to whether he actually did so for Wagner.  ECF 147-4 ¶¶ 7, 8.

Further, it is unclear whether Lt. Sires, who helped to escort Wagner to the medical room, remained there for the examination.[16] Cortez, the other known party in the medical room, avers that she was not present during the purported verbal exchange between Cross and Wagner.[17]

Even if it were determined that Wagner requested but was denied the decontamination shower, it is unknown whether he had access to sink water or whether such access was interrupted and, if so, for how long and for what reason.  Questions also remain as to whether Wagner's alleged complaints of injury are sufficiently serious so that denial of a shower and running water amounted to deliberate indifference.

In sum, as to whether Wagner was afforded the opportunity to decontaminate after the administration of pepper spray on December 31, 2013, there is conflicting evidence and genuine disputes of material fact.  In the light most favorable to Wagner, the state of the record supports summary judgment in favor of all correctional defendants, with the exception of Gordon and Cross.  The finder of fact must make credibility determinations as to what occurred on December 31, 2013, as to Wagner's decontamination; it is not appropriate to do so in the context of a summary judgment motion.  Accordingly, I shall deny the motion for summary judgment as to Gordon and Cross.

Wagner seeks discovery, among other things, of the video recording of his cell extraction on December 31, 2013, prison work logs, and access to "witnesses" not in his immediate proximity."  ECF 149-1.[18]  There is a question as to whether a video recording captured the

---

[16]   Gordon's use-of-force report indicates that Cross and Sires cut off Wagner's homemade body armor in the medical room, using shears.  ECF 75, Ex.1 at 259.

[17]   Nurse Cortez's Declaration is silent regarding who was in the medical room with her while she examined Wagner.

[18]   The cell extraction was recorded on video.  ECF 75, Ex 1 at 255;  ECF 147-2 at 15. The recording, which was reviewed by the IIU investigator as part of his inquiry, was

escort of Wagner to the medical examination and/or his placement in the temporary cell.  If it exists, it may cast light on some of the remaining questions.

As noted, Wagner has filed a motion for appointment of counsel. ECF 148.  He contends that appointment of counsel is necessary because he was unable to prepare adequately a detailed response to my Order of March 8, 2016.  *Id*.

Wagner is entitled to conduct some discovery.  *See Putney v. Likin*, ____ F.3d ____, 2016 WL 3755783, at *5 (stating that the district court should have determined that the prisoner was entitled to discovery before ruling on summary judgment motion).  Therefore, I shall appoint counsel for Wagner to assist him in his pursuit of this case.

### B.  The Medical Defendants

Cortez avers the facts here are substantially the same as those in *Germain v. Wexford Health Sources, Inc*., No. JFM-13-382, 2014 WL 956893 (D. Md. Mar. 11, 2014), affirmed in part and vacated in part (on other grounds), No. 16-6117 (4th Cir. November 7, 2016).   In *Germain*, after partially ruling on the health care provider defendants' dispositive motion, Judge Motz directed defendants to present supplemental evidence concerning plaintiff's claim that medical staff did not treat him "for the effects of chemical agent exposure." *Id*. In response, the health care provider defendants submitted an affidavit from Dr. Colin Ottey, the Medical Director of NBCI, who averred that NBCI protocol is to "provide inmates with the opportunity to shower after they have been medically cleared, but the shower is not performed by medical staff."  *Id.* at *2. Ottey explained: "Correctional staff are charged with the responsibility of providing a decontamination shower to inmates exposed to pepper spray."  *Id.*  Following

---

summarized in the IIU report.  ECF 82 at 36 n. 27, 42.   The record does not indicate whether Wagner's medical examination and placement in the temporary cell were captured on the recording.

treatment, plaintiff was released to correctional staff who offered him a decontamination shower. *Id.*.[19] Dr. Ottey's Affidavit in the instant case is substantially the same or identical in parts to the one he filed in *Germain*. Indeed, his Affidavit in this case is marked with the case number for *Germain*. ECF 145-2.

It is undisputed that NBCI decontamination showers are administered by correctional staff, not medical providers. After Cortez examined Wagner, she released him to correctional staff. Cortez maintains that she did not advise correctional staff to deny Wagner a decontamination shower. She was not present for, or involved in, the alleged denial of a decontamination shower and is without knowledge whether Wagner was denied access to water in the temporary cell.

The record establishes that decontamination showers are the responsibility of correctional staff, not medical staff. Therefore, Cortez and the Medical Defendants are entitled to summary judgment.

## V.  CONCLUSION

For reasons stated herein, the Medical Defendants' motion for summary judgment is granted. The State Defendants' motion for summary judgment is granted as to all State Defendants except for defendants Gordon and Cross.

Wagner's motion for partial summary judgment is denied. Wagner's motion for appointment of counsel shall be granted. Appointed counsel shall represent Wagner in his claims against Cross and Gordon in their personal capacities concerning the denial of a shower and access to running water after Wagner was subjected to pepper spray on December 31, 2013.

---

[19]  The correctional defendants in *Germain* filed a video copy of the medical examination which clearly showed Germain was offered and refused a decontamination shower. *Germain v. Wexford Health Sources, Inc.*, No. JFM-13-382, 2014 WL 956893 (D. Md. Mar. 11, 2014).

A separate Order follows.


<u>December 8, 2016</u>                     _____/s/_____
Date                                        Ellen Lipton Hollander
                                            United States District Judge